# BATES *v.* PREBLE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 123. Argued November 28, 29, 1893. — Decided January 8, 1894.

This court is not committed to the general doctrine that written memoranda of subjects and events, pertinent to the issues in a case, made cotemporaneously with their taking place, and supported by the oath of the person making them, are admissible in evidence for any other purpose than to refresh the memory of that person as a witness.

When it does not appear that such a memorandum was made cotemporaneously with the happening of the events which it describes, it should not be submitted to the jury.

If such a memorandum, made in a book containing other matter relating to the issues which is not proper for submission to the jury, be admitted in evidence, the leaves containing the inadmissible matter should not go before the jury.

In such case it is not enough to direct the jury to take no notice of the objectionable matter, but the leaves containing it should be sealed up and protected from inspection by the jury before the book goes into the conference room.

In Massachusetts, where an action in tort, grounded on fraud of the defendant, is commenced more than six years after the cause of action arose, and the general statute of limitations applicable to actions sounding in tort is set up, if the fraud is not secret in its nature, and such as cannot readily be ascertained, it is necessary to show some positive act of concealment by the defendant, to take the case out of the operation of that statute; and the mere silence of the defendant, or his failure to inform the plaintiff of his cause of action, does not so operate.

THIS was an action at law brought by Sarah A. Preble to recover of the defendants Bates and Walley, stock brokers, the value of certain securities, the property of the plaintiff, which she alleged had been converted by the defendants to their own use.

The facts were substantially as follows: Mrs. Preble, a widow and a resident of Portland, Maine, acquired by her husband's will certain securities, consisting of stocks and bonds, which she kept in a box in the vaults of the Union Safe Deposit Company, in Boston. Upon the trial she gave evidence tending to show that she entrusted the key of the box to her son, Edward Preble; that she visited the box herself in 1878 and found all her securities there; that she next visited it in the autumn of 1882 and found them all gone; that at various times between these dates her son had abstracted these securities from the box, to which she had given him access, and had taken them to the defendants, who were stock brokers, without authority from her, and that the defendants had sold the securities for him; that Walley, one of the defendants, had notice that the securities belonged to the plaintiff and had fraudulently concealed from her the fact of the conversion, and that she did not discover the conversion until within six years before the bringing of the suit.

Defendants claimed that some of her securities they had never sold or dealt with in any way; that others they had received from Edward Preble, and had disposed of by his directions and upon his account in the ordinary course of business, believing them to be his property; that they had no knowledge or notice that any of the property belonged to the plaintiff; that in fact some of the securities did not belong to her, and that if she ever had any cause of action against them for the conversion of these securities, the same arose more than six years before the bringing of her suit, and hence that such action was barred by the statute of limitations.[1]

The jury returned a verdict for the plaintiff for $34,772.88

---

[1] This statute of limitations will be found in the opinion of the court, *post,* 158.

damages, and handed to the court with their verdict a schedule containing the special items upon which they held the defendants liable, showing the securities which they found to have been converted by the defendants with the value of the same, and the date of their conversion from which interest was computed. Upon motion for new trial, the court held that there was no evidence to sustain the finding of the jury with respect to certain of the securities; that the value of such securities should be remitted from the verdict, or that a new trial should be granted. Judgment was finally entered for the plaintiff for $28,496.52, being the amount of the verdict less the amount remitted. Defendants sued out a writ of error from this court.

*Mr. Samuel Hoar* for plaintiffs in error.

*Mr. Robert M. Morse* and *Mr. Louis C. Southard,* for defendant in error, made the following points in their brief as to the seventh, eighth, and ninth assignments of error:

As to the admission of Mrs. Preble's memorandum book and permitting it to go to the jury under certain instructions, the portions of the book upon which the plaintiff relied were a page from an earlier memorandum book which was pinned into the book produced, and the first, second, third, fourth, fifth, sixth, seventh, eighth, and ninth leaves and page marked " X," all of which were in the handwriting of the plaintiff. The entries were original entries, and the fair interpretation of the report of the evidence is that they were made in the several years which they purport to cover.

These memoranda were simply schedules of the securities in her box from 1877 to 1882. They were supplemented by the oath of the plaintiff that they were her original entries and that they were correct. It must be presumed by this court that the appearance and character of the plaintiff's book indicated to the satisfaction of the judge at the trial that it was kept honestly, carefully, and accurately.

That books of account containing original entries and supplemented by the testimony of the party who kept them, are

admissible in evidence is well established in the courts of the United States, of Massachusetts, and of the States generally. *Insurance Co.* v. *Weide*, 9 Wall. 677; *Cogswell* v. *Dolliver*, 2 Mass. 217; *Prince* v. *Smith*, 4 Mass. 454; *Smith* v. *Sanford*, 12 Pick. 139; *S. C.* 22 Am. Dec. 415; *Harwood* v. *Mulry*, Gray, 250; *Pratt* v. *White*, 132 Mass. 477; *Miller* v. *Shay*, 145 Mass. 162; *Passmore* v. *Passmore*, 60 Michigan, 463; *Singer* v. *Brockamp*, 33 Minnesota, 501; *Webster* v. *Clark*, 30 N. H. 245; *Merrill* v. *Ithaca & Owego Railroad*, 16 Wend. 586; *S. C.* 30 Am. Dec. 130; *Payne* v. *Hodge*, 7 Hun, 612.

A book kept by a bank, containing entries of notices to makers and endorsers of notes, accompanied by the testimony of the clerk who kept the same, is admissible. *Shove* v. *Wiley*, 18 Pick. 558. See also *Farmers' & Mechanics' Bank* v. *Boraef*, 1 Rawle, 152.

Sheets of paper on which separate entries have been made have been received. *Hooper* v. *Taylor*, 39 Maine, 224; *Smith* v. *Smith*, 4 Harr. (Del.) 532; *Taylor* v. *Tucker*, 1 Georgia, 231. Also papers not evidence *per se*, but found to have been true statements of fact, are admissible in connection with the testimony of a witness who made them. *Insurance Companies* v. *Weides*, 14 Wall. 375.

In many States notes of testimony or of conversations, accompanied by the testimony of the person who made the memoranda, have been admitted on similar grounds to those on which the competency of books of account rests. *People* v. *Murphy*, 45 California, 137; *Labar* v. *Crane*, 56 Michigan, 585; *Halsey* v. *Sinsebaugh*, 15 N. Y. 485; *Clark* v. *Vorce*, 15 Wend. 193; *S. C.* 30 Am. Dec. 53; *Huff* v. *Bennett*, 4 Sandf. 120; *McAdams* v. *Stilwell*, 13 Penn. St. 90; *Glass* v. *Beach*, 5 Vermont, 172; *Marsh* v. *Jones*, 21 Vermont, 378; *S. C.* 52 Am. Dec. 67.

But it is unnecessary for the purposes of the case at bar to determine how far memoranda made by a party are admissible in evidence. The entries in the present case are of a character and made at times which rendered them competent. If, however, the memoranda were not admissible the defendant was not prejudiced by their admission.

(1) As was said by Morton, C. J., in *Miller* v. *Shay*, 145 Mass. 162, 164, " The plaintiff had clearly the right to use his account book to refresh and aid his memory. The fact that the book went to the jury could not prejudice the defendant."

. (2) The schedule, annexed to their verdict by the jury, shows that, of all the securities mentioned on the various pages of the plaintiff's book, the only ones on which the verdict was based were eight Minneapolis bonds of $1000 each, one Eastern Illinois bond of $1000, three Oregon Railroad Navigation bonds of $1000 each, five Chicago Sewerage Loan bonds of $1000 each, and two N. Y. & N. E. R. R. bonds of $1000 each, and from the amount reckoned on this basis the plaintiff remitted in accordance with the opinion of the court the amount allowed for one of the Chicago Sewerage bonds and for one of the Minneapolis bonds.

The defendant's ninth alleged error is to the ruling of the court, permitting the rest of the plaintiff's book to go to the jury without sealing up the same so that it could not be examined by the jury.

It is to be presumed that the court found that it was not practicable to seal up the rest of the book without impairing the use to be made of the leaves which were in evidence.

At all events, it was within the discretion of the presiding judge to send the book to the jury after instructing them not to examine the parts which were not in evidence. It will be presumed that the jury followed these instructions.

An examination of the part of the book not admitted in evidence shows that there was nothing contained therein, even if it had been read by the jury, which could have prejudiced the defendant unless it was the statement as to the plaintiff's dislike of the defendant Walley. But she had testified fully as to the facts on which this feeling was based.

But it is well settled that a paper which is in part legal evidence and in part not, may go to the jury if they are instructed to disregard the part which is not evidence. *Commonwealth* v. *Wingate*, 6 Gray, 485; *Commonwealth* v. *Dow*, 11 Gray, 316.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

There are thirty-four assignments of error in this case, many of which are of little importance, and as we have come to the conclusion that the case must be reversed and a new trial ordered, it is neither necessary nor advisable that we should dispose of them all.

(1) The seventh and eighth assignments are taken to the admission of certain pages of a memorandum book purporting to contain a list of securities owned by the plaintiff. Concerning this book she testified that " it was her own book, in her own handwriting, never seen by any one until it went into the hands of counsel; that the entries were made in it from time to time; that it showed the securities which she had, which went into the box in the safe deposit vaults." One page she testified was cut from an earlier book kept by her, which was pinned into this book, and that page showed what securities she had in her box in 1878. On cross-examination, she testified with reference to the first page, " that the figures at the top in pencil she put there when she took the page out of the other book and put it into that book. Those figures in pencil were 1877 and 1878; that she did not remember at what time she did this; that it was before 1882, and was after she cut it out of the other books; . ". . that she had no memorandum except what was on that paper in the book; that some of it was written in ink and some in pencil; that what was in ink was written when it was in the other book; that the pencil part was written after it was put in this book; that the summing up was made by her, but was not correct; that at the bottom of the page the value appeared to be as of 1871; she did not know whether it was its correct value in 1871 or 1877," etc. " That the entries in her memorandum book were not reliable; that she could not tell when she made the entries upon them or when the figures were set down; that she could not tell why she made the entries, nor why she had struck out any of them." This book was sought to be used, not for the purpose of refreshing the memory of

the witness, but was laid before the jury as independent evidence of the character and value of the securities.

There is no doubt that books of account kept in the usual and regular course of business, when supplemented by the oath of the party who kept them, may be admitted in evidence. *Insurance Company* v. *Weide*, 9 Wall. 677; *Cogswell* v. *Dolliver*, 2 Mass. 217; *White* v. *Ambler*, 8 N. Y. 170. But whether this rule extends to memoranda made by a witness contemporaneously with the event they purport to record, is open to very considerable doubt, elementary writers and courts being about equally divided upon the subject. 1 Greenleaf's Evidence, section 437, note 3; 1 Smith's Leading Cases, 6th Am. ed. 508, 510. In New York they are held to be admissible. *Halsey* v. *Sinsebaugh*, 15 N. Y. 485; *McCormick* v. *Penn. Central Railroad*, 49 N. Y. 303, 315. The cases in Massachusetts apparently favor a different view. *Commonwealth* v. *Fox*, 7 Gray, 585; *Dugan* v. *Mahoney*, 11 Allen, 572; *Commonwealth* v. *Ford*, 130 Mass. 64; *Commonwealth* v. *Jeffs*, 132 Mass. 5; *Field* v. *Thompson*, 119 Mass. 151. In this court it was held in *Insurance Companies* v. *Weides*, 14 Wall. 375, 380, that a statement in figures of the value of certain merchandise destroyed by fire, which statement professed to be a copy of another statement contained in a book, itself destroyed in the fire, accompanied by proof that on a certain day the witness took a correct inventory of the merchandise, and that it was correctly reduced to writing by one of them and entered in the volume burnt, and that what was offered was a correct copy, was admissible in evidence in a suit against the insurance company to fix the value of the merchandise burnt, though there was no independent recollection by the witness of the value stated. In delivering the opinion of the court Mr. Justice Strong observed: "How far papers, not evidence *per se*, but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry, and it has been many times decided that they are to be received. And why should they not be? Quantities and values are retained in

the memory with great difficulty. If at the time when an entry of aggregate quantities or values was made the witness knew it was correct, it is hard to see why it is not at least as reliable as the memory of the witness." This case might have been properly supported on the ground that they were entries made in the usual course of business, since from the report of a similar case (9 Wall. 677) this seems to have been the character of the entries. See also *Chaffee* v. *United States*, 18 Wall. 516.

In *Maxwell* v. *Wilkinson*, 113 U. S. 656, a memorandum of a transaction which took place twenty months before its date, and which the person who made the memorandum testified that he had no recollection of, but knew it took place because he had so stated in the memorandum, and because his habit was never to sign a statement unless it were true, was held to be inadmissible. Many of the authorities are cited, but the inadmissibility of the memorandum was put upon the ground that it was made long after the transaction it purported to state. The general question of the admissibility of such memoranda as independent evidence was not, however, decided.

In *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 99, which was an action against a railroad company by a passenger to recover for personal injuries, a written statement as to the nature and extent of his injuries, made by his physician while treating him for them, for the purpose of giving information to others with regard to them, was held not to be admissible in evidence against the company, even when attached to the deposition of the physician, in which he swore that it was written by him, and that in his opinion it correctly stated the condition of the patient. Numerous authorities were cited upon both sides of the general question as to the admissibility of such memoranda, but the court held that the case did not require an examination of such authorities, inasmuch as it did not appear but that at the time the witness testified he had, " without even looking at his written statement, a clear, distinct recollection of every essential fact stated in it. If he had such present recollection there was no necessity whatever for reading that paper to the jury."

We do not regard any of these cases as committing this court to the general doctrine that such memoranda are admissible for any other purpose than to refresh the memory of the witness.

· But even if it were conceded that such a memorandum as that in question made cotemporaneously with the deposit of the securities, and properly authenticated by oath of the plaintiff, would be admissible as independent evidence, the testimony of the plaintiff fell far short of establishing the requisite qualifications for its admission. It does not appear when the memorandum was made, or that it was cotemporaneous with the deposit of the securities. Upon the other hand, it seems the entries were made from time to time, though not apparently as the securities were deposited in the box. Indeed, the plaintiff swears directly that she could not tell when she made the entries upon them, or when the figures were set down; that she could not tell why she made the entries, or why she struck out any of them, and that the entries were not reliable. She further testified that she never "saw any Oregon Navigation six per cent bonds, and never saw or received any Eastern Illinois bonds; . . . that she never had any New York and New England seven per cent bonds in her possession, and never saw them in her box; that she never saw any certificate of Consolidated Virginia stock;" and yet entries relating to these securities appear upon several of the pages of the book. Upon two or three of the pages there is not an entry that has the remotest connection with the question at issue, and it is difficult to see any ground upon which these pages were admitted.

Upon the whole, we think these memoranda, if inadmissible for no other reason, were not sufficiently authenticated to make it proper to submit them to the jury.

(2) By the ninth assignment of error it appears that after the close of the case, and when the jury were about to retire to consider their verdict, the court allowed the whole of the memorandum book to go to the jury without any sealing or other protection of the leaves and pages not put in evidence. It appears that when the court admitted the leaves and pages containing the memoranda above alluded to, it directed the

rest of the book to be sealed up or otherwise protected from the inspection of the jury; but that when the jury were about to retire, the plaintiff offered to send the whole book without such protection, and the court directed the jury not to examine any part of the book except what was put in evidence, and permitted the whole book with that instruction to go to the jury. To this the defendants excepted. We think the court should have adhered to its directions to take such measures as were necessary to prevent the jury from seeing other portions of the book, as they contained matter, which, though bearing upon the issue, was wholly inadmissible as testimony, and was calculated to create in the minds of the jury a strong prejudice against the defendants. This error was not cured by the instructions to the jury not to examine any part of the book except what was put in evidence. Such instructions might have healed the error, if the contents of the book had been unimportant. But the objectionable portions in this case were such as were likely to attract the eye of the jury, and accident or curiosity would be likely to lead them, despite the admonition of the court, to read the plaintiff's comments upon the defendants and her private meditations, which had no proper place in their deliberations. The precise question involved here arose in *Kalamazoo Novelty Co.* v. *McAlister*, 36 Michigan, 327, where an entire book was suffered to be taken to the jury room when but three pages were in evidence, and it was held that the instruction not to look at the unproved part should not be taken as relieving its admission to the jury room from error. See also *Commonwealth* v. *Edgerly*, 10 Allen, 184; *Stoudenmire* v. *Harper*, 81 Alabama, 242.

(3) The errors alleged in the 30th, 31st, and 32d assignments relate to the instructions given by the court upon the applicability of the statute of limitations, and to the competency of the testimony introduced to take the case out of the bar of the statute. The Massachusetts statute provides as follows, (Pub. Stat. Mass. c. 197):

"SEC. 1. The following actions shall be commenced within six years next after the cause of action accrues and not afterwards. . . .

"Fourth. All actions of tort, except those hereinafter mentioned. . . .

"Sec. 14. If a person liable to any of the actions mentioned in this chapter fraudulently conceals the cause of such action from the knowledge of the person entitled to bring the same, the action may be commenced at any time within six years after the person so entitled discovers that he has such cause of action."

It is undisputed in this case that the embezzlements which formed the subject of the action were committed between 1878 and 1882, and in the schedule brought in by the jury and handed up with their verdict, interest was computed upon all the securities alleged to have been converted from a date anterior to January 25, 1881. As the writ by which the action was begun was dated January 25, 1887, the action would appear to have been barred by the statute unless the evidence was such as to justify the jury in finding that there had been a fraudulent concealment of the embezzlement from the knowledge of the plaintiff. If the statute had simply provided that the six years should run from the discovery of the fraud, there could be no doubt of the right of the plaintiff to maintain this action, as there is no evidence that she discovered the fraud prior to her examination of the contents of her box in 1882. Such seems to have been the rule in common law actions, adopted by the Supreme Judicial Court of Massachusetts prior to the enactment of section 14. *Homer* v. *Fish*, 1 Pick. 435; *Welles* v. *Fish*, 3 Pick. 74; *Farnam* v. *Brooks*, 9 Pick. 212, 244. In construing this statute, however, the courts of Massachusetts have held in a number of cases that the mere silence of the defendant, or his failure to inform the plaintiff of the cause of action, is not such a fraudulent concealment as is contemplated by the statute, and that some positive act of concealment must be proved. Thus, in *Nudd* v. *Hamblin*, 8 Allen, 130, it was held that the omission to disclose a trespass upon real estate to the owner, if there is no fiduciary relation between the parties, and the owner has the means of discovering the facts, and nothing has been done to prevent his discovering them, is not such a fraudulent con-

cealment of the cause of action as will prevent the bar of the statute. The court cited with approval the case of *Cole* v. *McGlathry*, 9 Greenl. 131, in which the defendant had received from the plaintiff funds to pay certain debts, and falsely affirmed that he had paid them. It was held that though he was guilty of a breach of moral and legal duty, having added falsehood to his neglect to pay, yet it was not such a fraudulent concealment as would take the case out of the statute, because the plaintiff had the means of discovering the truth at all times by inquiry of the persons who should have received the money. The court also cited the case of *McKown* v. *Whitmore*, 31 Maine, 448. This was an action to recover money which the defendant had agreed to deposit in a certain bank for the plaintiff, and which he told the plaintiff he had deposited. It was held that, even if this statement was untrue, it did not constitute a fraudulent concealment, because the plaintiff had at all times the means of discovering the truth. In *Walker* v. *Soule*, 138 Mass. 570, the action was founded upon certain representations made by the defendant, the administrator of an estate, that he was licensed by the probate court to sell the real estate of his intestate; that he had good right to sell it; that the title to it was good; and that the deed, a copy of which was in evidence, was in proper form and sufficient to pass the title. It was held that, as these representations were as to the contents of public records, which the plaintiff had full opportunity of examining, they were not sufficient to prove a subsequent fraudulent concealment from the knowledge of the plaintiff. So in *Abbott* v. *North Andover*, 145 Mass. 484, it was held that the representation by a township officer that he had authority to bind the town by the renewal of a promissory note, when in fact he had no such authority, was not a fraudulent concealment by the town of the cause of action, and hence that an action could not be maintained on the note, of which this was a renewal, which was not brought within six years.

On the other hand, if the fraud itself be secret in its nature, and such that its existence cannot be readily ascertained, or if there be fiduciary relations between the parties, there need be

no evidence of a fraudulent concealment other than that implied from the transaction itself. This is illustrated by the case of the *First Massachusetts Turnpike Corporation* v. *Field*, 3 Mass. 201, in which the defendants, having contracted with the plaintiffs to make for them a turnpike road upon a firm foundation, with suitable materials, etc., made a road upon a bad foundation, using unsuitable materials and unfaithfully executed the work, and fraudulently and deceitfully concealed the foundation and materials by covering the same with earth and smoothing the surface, so that it appeared to the plaintiffs that the contract had been faithfully executed, it was held that the contract was of such a nature as to admit of a fraudulent and deceitful execution, and that the fraud was in fact concealed from the knowledge of the plaintiffs. So in *Manufacturers' National Bank* v. *Perry*, 144 Mass. 313, a bank overpaid to the clerk of the defendant the sum of $200 on a check drawn by the defendant. Defendant, being notified by the clerk of the mistake, instructed him not to return the money, and to deny to the bank that he had been overpaid, which he did. It was held that his approval and adoption of the lie told by the clerk to the bank teller were active steps taken by him to prevent the bank from discovering the fact that he had received the money, and constituted a fraudulent concealment of the plaintiff's cause of action. So in *Atlantic Bank* v. *Harris*, 118 Mass. 147, 154, a state bank paid to its president money which he falsely represented that he had paid to an agent to whom the bank was indebted. Subsequently the agent brought an action against the bank, and recovered the amount due him. It was held, in an action for money had and received, brought by the bank against the president, that the court was warranted in finding that the defendant had fraudulently concealed the cause of action from the bank, on account of the peculiar relations between them. "A bank," said the court, "must necessarily act through its officers; its officer upon whom it relied in this instance was the defendant, who had charge of this particular transaction with Pierce, and he who should have disclosed the cause of action, was the party engaged in concealing it." See also

*Wood* v. *Carpenter*, 101 U. S. 135; *Felix* v. *Patrick*, 145 U. S. 317.

In this connection the court in the case under consideration charged the jury as follows:

"Now, gentlemen, I shall charge you as matter of law this: That if you believe that the defendants here were not guilty of any fraud in these transactions, if you believe that they took these negotiable securities in, if you please, the ordinary course of their business and sold them, then Mrs. Preble would not have a right in this case to bring suit for anything that took place prior to January, 1881; but, on the contrary, if from the evidence you believe that Walley, one of the defendants, conspired with young Preble to obtain these bonds and afterwards to conceal the fact from the mother, he, Edward, having the key to the safety box containing the securities, this would be evidence going to prove a fraudulent concealment of the cause of action, such as would bring it within the exception of the statute. So that, gentlemen, whether there was a fraudulent concealment of the transaction such as would make Mrs. Preble's whole claim good here turns upon the question whether you believe from the evidence which has gone in before you that the defendants here acted in the ordinary course of their business, or whether you believe upon the evidence that one of the defendants, Walley, was a co-conspirator with Preble in these transactions, and that young Preble also had the key to his mother's safe, so that, if you please, his mother with great difficulty could obtain access to it or knowledge as to whether those securities existed or not. Those rules of law, gentlemen, you will apply upon the subject of the statute of limitations."

We think the court erred in this instruction. It assumes that the same evidence which tended to show a conspiracy between Edward Preble and the defendants to obtain these bonds was also evidence of an intention on defendants' part to keep a knowledge of the transaction from the plaintiff. This, however, does not necessarily follow. If it did, the result would be that whenever a party has been guilty of a fraud, which it is for his interest should not be known by the per-

son upon whom it is committed, he would practically lose the benefit of the statute, though he may not have made the slightest effort to keep it secret. The vice of the instruction in this particular was that there was no evidence whatever that the defendants, or either of them, said or did anything before or after the securities came into their hands, to conceal the transaction from the plaintiff. There was no claim that the defendant Bates knew anything about it. Defendant Walley was the active partner in the transaction, and there is nothing to indicate that he made any effort at concealment. While he sometimes called at the plaintiff's house, it does not appear that he ever spoke to her about business until the autumn of 1882, when he called upon her and told her that her son was in trouble and had been arrested in New York. Upon plaintiff offering to raise money and assist him by the sale of some of her bonds and stock, he then informed her that he was afraid they were lost. Within two or three days after that she went to the vault and found that they had been abstracted. Granting that the relations between Edward Preble and his mother were such as to make a revelation of the facts a duty upon his part, there was no such confidential relation between the plaintiff and defendants as would cause silence upon their part to be imputed as a fraud. Even admitting that they and Edward Preble were co-conspirators, and that they were responsible for his acts connected with such conspiracy, it would be carrying the doctrine to an unwarrantable extent to hold that his subsequent silence upon the subject could be chargeable to them.

Without discussing the other assignments we think the case should be

*Reversed and remanded to the Circuit Court with instructions to set aside the verdict and grant a new trial.*