Mr. Justice Morris
delivered the opinion of the Court:
1. The question principally argued before us, and upon which greatest stress seems to be laid by the appellants, is that of the admissibility in evidénce of the memorandum mentioned in the statement of the case; and after full and careful consideration of the principles involved and of the authorities cited or referred to on both sides, we are of opinion that this question was properly determined by the trial court against the contention of the appellants. To a certain extent the question is a vexed question, and the authorities are greatly and hopelessly at variance on the subject. But we think that, in the present case, we are *177 spared the necessity of a review of these authorities in order to determine with which in our opinion is the better reason; and that we are likewise spared the necessity of taking sides upon the general question. For we think that, whatever may be the dictate of reason in regard to the general admissibility or inadmissibility of such memoranda, there was no sufficiently good ground in this case for the admission of the memorandum that was sought to be introduced.
While the authorities which have declared for the admissibility of such memoranda in evidence differ between themselves as to the grounds for the justification of their conceded departure in this instance from the rigid rule of the common law which excludes testimony made for himself by one of the parties to a cause, it seems to be taken for granted by all the authorities that such testimony is no more than secondary evidence at best, and is admissible only in the interest of justice when no better testimony is available. It is the settled law, as stated by the Supreme Court of the United States in the case of Bates v. Preble, 151 U. S. 149, 155, “that books of account kept in the usual and regular course of business, when supplemented by the oath of the party who kept them, rnay be admitted in evidence. Insurance Co. v. Weide, 9 Wall. 677; Coggswell v. Dolliver, 2 Mass. 217; White v. Ambler, 8 N. Y. 170.” “But whether this rule extends to memoranda made by a witness contemporaneously with the event they purport to record, is open to very considerable doubt, elementary writers and courts being about equally divided upon the subject.” Bates v. Preble, supra. And the Supreme Court, in that case, while rejecting the memoranda under consideration as not having been sufficiently authenticated, distinctly and expressly stated that it did “not regard any of the cases cited as committing that court to the general doctrine that such memoranda are admissible for any other purpose than to refresh the memory of the witness.”
When we look for the reason of the rule which authorizes *178 the introduction of books of account in evidence which have been kept in the usual and regular course of business, and under which rule it is sought to make other memoranda also admissible, it is plain that such documents were admitted in the first instance in consequence of the disqualification of parties from being themselves competent witnesses at the common law, and because in the great number and magnitude of mercantile transactions it was simply an impossibility in many cases that any adequate personal recollection should be retained by anyone, and it was the tacit understanding of the parties that a record of the details should be committed to books of account. But without reference to the distinction sought to be maintained between regular books of account and other memoranda, we know of no case, and we find no case cited, in which either boojis of account or other .memoranda were admitted in evidence, when it appeared that there were living witnesses present cognizant of the transaction sought to be proved and fully competent to testify in regard to it.
In the case of Vicksburg and Meridian Railroad Company v. O’Brien, 119 U. S. 99, the Supreme Court of the United States, by Mr. Justice Harlan, said :
“ There are adjudged cases which declare that, unless prepared in the discharge of some public duty, or of some duty arising out of the relations of the witness with others, or in the regular course of his own business, or with the knowledge and concurrence of the party to be charged, and for the purpose of charging him, such a memorandum can not under any circumstances be admitted as an instrument of evidence. There are, however, other cases to the effect, that, where the witness states under oath that, where the memorandum was made by him presently after the transaction to which it relates, for the purpose of perpetuating his recollection of the facts, and that he knows it was correct when prepared, although after reading it he can not recall the circumstances so as to state them alone from memory, *179 the paper may be received as the best evidence of which the case admits. The present case does not require us to enter upon an examination of the numerous authorities upon this general subject; for it does not appear here, but that at the time the witness testified he had, without even looking at his written statement, a clear, distinct recollection of every essential fact stated in it. If he had such present recollection, there was no necessity whatever for reading that paper to the jury. Applying then to the case the most liberal rule announced by any of the authorities, the ruling by which the plaintiffs were allowed to read the physician’s written statement to the jury as evidence in itself of the facts therein recited, was erroneous.”
This decision, it is true, was that'of a bare majority of the court. Four of the justices concurred in an opinion written by Mr. Justice Field, in which he said :
“If the recollection of the condition of the patient had passed from the mind of the physician, and he could still have testified that the statement made by him when the patient was under his charge was true, it would have been admissible. It is difficult, therefore, to find any just reason for excluding it from the fact that, in corroboration of its truth, the physican also testified to the facts therein stated.”
But the doctrine of the court as announced by the majority was cited with approval by a unanimous court, or at least without dissent, in the subsequent case already cited of Bates v. Preble, 151 U. S. 149; and we do not understand that it has been modified by any subsequent decision of that tribunal.
In the case of Curtis v. Bradley, 65 Conn. 99: 28 L. R. A. 143-147, mainly relied upon by the appellants on this question, it appeared that the witnesses called to testify in regard to the transaction, and who had participated in making the memoranda which were held in that case to have been properly admitted in evidence, had no present recollection of the transaction, and their recollection was *180 not refreshed by the reading of the memoranda. And while the point was not made in that case and was not required to be made in it, yet it is a fair inference from the opinion of the court that, if the witnesses had a distinct recollection of the transaction independently of the memoranda, or after having their recollection of it refreshed by a perusal of the memoranda, these writings would have been excluded.
The ruling of the Supreme Court of the United States in the case of Railroad Co. v. O’Brien seems to us to be conclusive of the present question. There it was held that it was error to admit in evidence the memorandum made by a physician at the time of an accident as to the character of an injury sustained by a plaintiff, when the physician himself was present as a witness, and must be assumed to have been able to testify as to the facts from his personal recollection. In the case before us there is no need to proceed upon any assumption; for the person who made the memorandum, which was sought to be introduced in evidence, not only had a distinct personal recollection of the transaction, but actually testified, independently of the memorandum, and of his own personal knowledge and recollection, to each and every fact stated in it. There was no necessity, therefore, for the introduction of the memorandum, and under the authority of the case of Railroad Co. v. O’Brien, we must hold that it was properly excluded.
2. But we think that there was error in the ruling of the trial court in regard to the measure of damages in this case. The instruction upon this point, which was requested by the plaintiff and given by the court to the jury, is in these words:
“The plaintiff prays the court to instruct the jury that, if the jury find from the evidence that the plaintiff on the 22d day of March, 1899, employed the defendants to purchase for him 100 shares of Brooklyn Rapid Transit stock on the New York Stock Exchange at its market value on the morning of the 23d of March, and deposited with the *181 defendants the sum of two thousand dollars as a margin or part payment on said stock, and the defendants neglected to make said purchase, then the plaintiff is entitled to recover in this action the difference between the market value of said stock on the 23d of March, 1899, and the market value-of said stock within such reasonable time in the judgment of the jury after the plaintiff had knowledge that the defendants had not purchased said stock as would have enabled the plaintiff to have purchased the same.”
This instruction assumes, without any proof of the fact in the record, that the intention and desire of the plaintiff to purchase the stock remained for some time after he had been advised of the failure of the defendants to make the purchase' for him; and, although he never made the purchase himself at any time afterwards, and, so far as the record shows, never had anj intention to make such purchase, yet the jury are directed, under the instruction, to allow him such sum of money as would have enabled him to make it; if he had wished. This was to give him a gratuity instead of compensating him for a loss. The theory of the suit is that the plaintiff suffered damage by the wrongful act of the defendants; but it is not apparent how there was or could have been damage in respect of a subsequent purchase, when there was no such subsequent purchase, no necessity therefor, and no liability to make any such purchase. If the plaintiff had been compelled to purchase at the higher figure, or if he had actually purchased at such higher figure, a case might be presented that would have justified this instruction; but no such case is exhibited in the record before us. There may have been damage to the plaintiff from the failure of the defendants to execute the commission given to them, if they did so fail; and the plaintiff, upon that assumption, would be entitled in any event to nominal damages. But the damages in law could be only such as would directly and naturally result from the wrongful act of the defendants, and could *182 have no reference to any possibility of subsequent purchase by the plaintiff.
It is not surprising, perhaps, that the trial court was misled into giving this instruction in view of the fact, very thinly disguised, that the transaction between the parties was in reality a stock gambling transaction, in which it may well be assumed there was no actual intention of the parties at the time, or at any time, to purchase the stock in question outright or at all, but in which the purpose was merely to speculate upon a rise in value, to sell again when there was such a rise, and to settle by the payment of differences. This is sufficiently evidenced by the fact that the purchase was to be upon a “margin,” although it is sought to disguise the significance of this term by the use of the words “part payment” as its equivalent; and by the further fact that no sufficient sum of money for the actual purchase of the stock was ever deposited or sought to be deposited with the defendants, or was at any time tendered to them. In fact, the plaintiff’s declaration is based upon a case of this kind; for the allegation of damage is, not that the plaintiff bought, or was compelled by the default of the defendants to buy, the stock at an enhanced price, but that he could have 'sold at such enhanced price, and that his loss was the difference between the two prices, that at which he could have bought and that at which he could have sold. And if the instruction had been addressed to such a case as this, there might be some ground on which to sustain it, with the modification, of course, that it should have reference, not to the sum which would be required for subsequent purchase, but to the profit which might be realized by a subsequent ,sale.
But by his own testimony the plaintiff has precluded him - self from having even such an instruction as this. The case made by the testimony is not precisely the case indicated by the declaration. It' is simply that of an order given and accepted to purchase the stock in question, which order the *183 defendants failed to execute. There was no purpose indicated that the defendants should hold and carry the stock for a rise in value, and sell it again whenever the plaintiff should direct. Whatever implication to that effect arises from the use of the term “margin,” and from the fact that no sufficient sum of money for actual and complete purchase was advanced, or, so far as this record shows, was intended to be advanced, is completely negatived for all the purposes of the present case by the plaintiff’s express statement that, on the 27th day of March, he vrent to the office of the defendants “ to close the deal,” according to his own language. It is not, perhaps, entirely clear what is meant by this expression; for there might be several ways of closing such a deal. But the plaintiff has confined himself to one interpretation of it; that of the delivery of the stock by the defendants to him; for he testifies that he then and there made demand upon the defendants for such delivery, and that the stock was not delivered to him. How he expected any such delivery without a previous tender of the balance of the purchase money is an apparent inconsistency which is not explained, and the demand itself was unnecessary, in view of the communication already made to him by the defendants that the stock had not been bought. But it is sufficient to show that, as the plaintiff then sought to have the case understood, the commission to the defendants, which they failed to execute, was strictly limited to the purchase of the stock and its delivery to him, presumably upon his readiness to pay the'residue of the purchase money. The damage, therefore, to which the plaintiff limits himself, is the damage directly and naturally resulting from the failure to purchase and deliver, and not either the sum for which a subsequent purchase might be effected, or the profit that might be realized from a subsequent sale; for, under the testimony of the plaintiff, neither one of these things was contemplated in the agreement of the parties.
We think that the case is governed by the general rule *184 laid down in the case of Howard v. Stillwell & Bierce Manufacturing Co., 139 U. S. 199, where it is said, in accordance with the almost unanimous agreement of all the authorities, both in England and in the United States, that, “as a general rule, subject to certain well established qualifications, the anticipated profits prevented by the breach of a contract are not recoverable in the way of damages for such a breach.” And the well established qualifications are thus stated: “ It is well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which, it was made, it may be reasonably presumed that they were within the intent and mutual understanding of the parties at the time it was entered into.” Howard v. Stillwell & Bierce Manufacturing Co., 139 U. S. 199. See, also, the case of Hadley v. Baxendale, 9 Exch. 341.
Now, the cáse made by the plaintiff in' his testimony does not come under any one of these qualifications; nor does it come within the scope of any one of the authorities cited by him, all of which were cases in which prospective profits were allowed as damages, because they were expressly contemplated by the parties to the transactions or necessarily implied in their contracts, or where there was, in contemplation of law, conversion of the property or property rights of the plaintiff in the hands of the defendants. See Galigher v. Jones, 129 U. S. 193; White v. Smith, 54 N. Y. 522; Baker v. Drake, 66 N. Y. 518.
In the instruction under consideration the plaintiff does not claim any profits at all in his estimate of damages, unless it be by indirection; and lienee none of the cases cited in support of it are applicable. The claim is that, because the defendants did not buy for him at the time and for the *185 figure which he specified, he should have sufficient money from them to enable him to purchase at some time after-wards without greater expenditure on his own part, and without any show whatever of special loss accruing from the failure of the defendants or of any necessity or liability on his part to purchase the stock then or at any other time. We do not think that there is any warrant in reason or in the authorities for this proposition.
The plaintiff is undoubtedly entitled to damages upon his theory of the case, if that theory is established by the evidence. But under his testimony as here given, those damages do not include prospective profits, and can have no reference to a prospective price for the stock to be paid by him for its purchase. He did not, in fact, purchase; and he was under no liability to purchase; and it was not in the contemplation of the parties that he would purchase at the enhanced price.
We think, therefore, that, under the circumstances of this case, there was error in the instruction given as to the measure of damages; and for this error the judgment must be reversed, with costs, and the cause must be remanded to the Supreme Court of the District,' with directions to vacate the verdict and to award a new trial. And it is so ordered.