### ALASKA COMMERCIAL CO. v. DINKELSPIEL.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1903.)

#### No. 858.

1. BAILMENTS—ACTION ON DEPOSIT—APPEAL—PREJUDICIAL ERROR.
    Plaintiff deposited money and gold dust with defendant in two accounts—one subject to draft, and the other as a special deposit. Plaintiff sued to recover the value of three deposits which he alleged were special. Plaintiff introduced three receipts, one of which did not show

a special deposit; and defendant claimed that all of the gold dust and money deposited had been settled for, except one package, which it offered to deliver. Plaintiff, in order to corroborate his testimony, offered a writing which purported to be a copy of the receipts made by plaintiff's clerk, which showed that the three deposits sued for were special. This writing was objected to, and marked for identification; and, though not introduced in evidence, the court, under the impression that it had been introduced, permitted plaintiff's counsel to base an argument thereon, and included the writing in the papers sent out with the jury. *Held*, that the court's allowing such exhibit to go to the jury was prejudicial error.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The defendant in error brought an action against the plaintiff in error, alleging that between November 1, 1899, and August 1, 1900, he deposited with the latter, at Nome, Alaska, gold dust and lawful money of the United States to the amount of $10,684.64, no part of which had been repaid, except $6,081.64. The answer alleged that the demand of the defendant in error against the plaintiff in error arose out of three several deposits of money and gold dust in packages deposited with the plaintiff in error, respectively, on November 23, 1899, April 25, 1900, and May 9, 1900, for which it had issued to the defendant in error its receipts; and it alleged that at some date or dates between November 23, 1899, and July 27, 1900, the defendant in error surrendered to the plaintiff in error said receipts, and obtained thereon the said deposits. And it further alleged that the plaintiff in error still had in its possession one package supposed to contain gold dust of the approximate value of $2,340, belonging to the defendant in error, which it was ready and willing to surrender. The evidence on the trial showed that during the period referred to in the complaint the defendant in error made two classes of deposits with the plaintiff in error—deposits to be drawn upon by the depositor by check or by draft, and deposits in packages for safe-keeping. The defendant in error testified, in substance, that his demand against the plaintiff in error arose upon three deposits made for safe-keeping; that on November 23, 1899, he made his first deposit of that class with the plaintiff in error by depositing $1,665 in currency, gold dust, and gold coin, for which he received the receipt Exhibit A, which reads as follows:

"$1,665.00. Nome City, 11—23—99.

"A. Dinkelspiel has deposited with the Alaska Commercial Comp:

$240.00 in currency,
$425.00 Gold Coin,
61½ oz. of gold dust.

Each in separate packages, not weighed or counted.

"W. R. Wheaton."

He testified further that this was a deposit for safe-keeping, although the receipt, it will be observed, does not so state. He testified that on April 25th he deposited for safe-keeping with the company $2,024.75, for which Wheaton gave him the receipt marked "Exhibit B," of which the following is a copy:

"Nome, Alaska, Apl. 25, 1900.

"Received of A. Dinkelspiel one sack said to contain $2,024.75 at $16 per oz. in gold dust for safe-keeping. A. C. Co., Wheaton."

—That on May 9, 1900, he deposited for safe-keeping $313.25, for which he received the receipt Exhibit C, which is in form identical with Exhibit B; that in the meantime between January 6, 1900, and June 26, 1900, inclusive, he made 14 deposits with the Alaska Commercial Company, of various amounts, aggregating $6,681.64, for which they had given him nine receipts, acknowledging that the money had been paid in "to deposit"; and that on account of such deposits he had drawn out various sums at different times, so that on July 21, 1900, there was due him on that account a balance of $2,012.64. He testified that on that date he asked the company for this bal-

ance, and for the gold dust which he had left with it for safe-keeping, and applied for two drafts on San Francisco—one for $2,000 and one for $2,003—for use in his business, the drafts to be drawn on account of what he had there for safe-keeping, and that he delivered his receipts to Mr. Wheaton, but did not receive the drafts or any part of the money and gold dust which had been left for safe-keeping; that Wheaton took the receipts, and handed him back only a receipt to be signed for the balance of his open account, and thereupon gave him the balance of $2,012.64. He testified further that immediately after he received the receipt from Wheaton the latter walked out of the office, and did not return, and that he waited in the office for two hours, inquiring in the meantime where Wheaton was, but no one seemed to know, and that he never saw him after that. O. W. Carlson, on behalf of the plaintiff in error, testified that he became the agent of the plaintiff in error on July 4, 1900; that he saw Wheaton in the office during the afternoon of July 21st, and that he left the store with him at about 6 o'clock on that afternoon, and that Wheaton never returned to the store afterwards; that some time after Wheaton's death the defendant in error told him that he had some gold sacks that he had placed with the company for safe-keeping. The witness answered that he would see about it, and that he then inquired of the bookkeeper, and found that the company held one sack (the sack of $2,340 gold dust referred to in the answer); that he showed this sack to the defendant in error, and the latter answered that he should have another, which he said contained about $300, and that the defendant in error said, also, that he had delivered his receipts to Mr. Wheaton in order to have him compare the accounts; that the witness asked him why he did not get his receipts back, and that he replied that Wheaton would not give them back; that the witness then told him that he could have got them back if he had come to him—that the witness would have seen that he got them back; and the witness testified that he asked the defendant in error why he had not come to him during Mr. Wheaton's illness, that he might have had an opportunity to speak to Mr. Wheaton about the receipts. None of this testimony was contradicted by the defendant in error or by any witness.

From this statement of the facts, it becomes apparent that one of the important issues of the case was whether or not the three receipts were surrendered to the company on July 21, 1900. To sustain his own evidence that such was the case, the defendant in error produced a writing, known in the record as "Identification D," and which we will call "Exhibit D," which purports to be a copy of receipts held by him from the plaintiff in error. It contains the dates and amounts of nine deposits of money and gold dust, together with the words "to deposit" set opposite each. It contains, also, the dates and amounts of the three receipts for the deposit of the three packages in controversy in this suit, which are marked on said exhibit "for safe-keeping." This exhibit bears date Nome, July 21, 1900. The defendant in error testified that it was written on that date by his clerk, Hugo Platt. It appears from the bill of exceptions that when the paper was produced on the trial of the cause, and the defendant in error was asked what it was, and by whom it was made, and from what, objection was made by counsel for the plaintiff in error on the ground that it was immaterial, irrelevant, and incompetent, and not the best testimony, whereupon the paper was marked for identification. It does not appear from the record that it was at any time offered in evidence, or admitted in evidence, or read to the jury. Later, on the argument of the case before the jury, it was referred to by counsel for the defendant in error, whereupon opposing counsel objected on the ground that said paper was not in evidence. The objection was overruled by the court; the court remarking that, to the best of his recollection, the exhibit had been offered and received in evidence without objection. When the jury retired, the exhibit was included among the papers which they took to the jury room, whereupon counsel for the plaintiff in error again objected upon the ground that the paper was not in evidence. The court then said: "My recollection of that paper was that it was marked as identified, then offered and received in evidence." Counsel for plaintiff in error said, "It was identified, but never offered in evidence," and counsel for defendant in error replied, "It was an oversight if it was not offered in evidence."

Thomas & Gerstle, Charles S. Johnson, and A. J. Daly, for plaintiff in error.

W. S. Goodfellow and Charles P. Eells, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that the court permitted counsel for defendant in error to comment upon Exhibit D as being a part of the evidence, and to read the same to the jury, and that the court permitted said paper to go to the jury, and permitted the jury to consider it as part of the evidence in the case. It is evident from the bill of exceptions that the exhibit was, by inadvertence, not offered or received in evidence, nor read to the jury. Was the ruling of the court in permitting the jury to consider it as evidence, and in permitting them to take it to the jury room, error for which the judgment must be reversed? That it was error is too clear to require discussion. But did it affect a substantial right of the plaintiff in error? To answer this question, it becomes necessary to consider the bearing of the exhibit upon the issues which the jury were called upon to decide. The defendant in error had made two classes of deposits with the plaintiff in error: First, a series of deposits to be drawn against on account; second, certain deposits in packages for safe-keeping. He testified that the three deposits for which the action was brought were all of the latter class. The receipts which were given by the agent of the plaintiff in error for those deposits were produced in evidence. They were found in the possession of the plaintiff in error, its agent having in some way recovered their possession. The defendant in error was the only witness who testified as to the circumstances of their surrender. The plaintiff in error did not profess to know anything of the transaction, except that the receipts had been issued by its agent, and were found in its possession some time after the agent's death, and that there were no packages in its possession corresponding thereto. It was its contention that the packages must have been returned to the owner at the time when the receipts were surrendered. The receipt which was given for the deposit of November 23, 1899, differs materially in form from the other two. It does not, upon its face, purport to show that the deposit thereby represented was a deposit for safe-keeping. One of the questions involved in the case, therefore, was whether that deposit was a deposit for safe-keeping, or a deposit to account, to be drawn against. If it was the latter, it had been included in the settlement of the account, and the defendant in error could not recover for it in the present action. The defendant in error testified that he wrote out the receipt before he made the deposit, but that the agent, when he signed it, added thereto the words "not weighed or counted." These words appear on the receipt, but the defendant in error testified that before the receipt was signed the agent counted the currency and gold coin, and at his request weighed the gold dust; and the witness added, "I wished it weighed, as I was making the deposit." The language of the receipt would seem to indicate that it might have been a receipt for money

121 F.—21

and gold dust deposited on account, but the defendant in error testified that it was for packages left for safe-keeping. Exhibit D tends to corroborate him in that respect. It contains the entry of the deposit referred to in the receipt, and adds the words "for safe-keeping," words which are not found in the receipt. The clerk who prepared Exhibit D did not testify from what information or from what data he entered those words. As Exhibit D went to the jury, it contained information in writing tending to show that the deposit of November 23, 1899, was made "for safe-keeping," and was therefore not one of the deposits included in the settlement of July 21, 1900, when, according to the testimony of the defendant in error, he drew down the balance due him on account of deposits made to account, or to be drawn against. The written entry, also, of the date "July 21, 1900," as shown on Exhibit D, tended to corroborate the testimony of the defendant in error that on that date he still had in his possession, and had not yet surrendered, the three receipts. In fact, his counsel, in addressing the jury, as it appears from the record, referred to Exhibit D, and argued to the jury that the testimony of Platt and the defendant in error that they had these receipts in their possession on July 21, 1900, was confirmed and corroborated by the fact that Exhibit D was made, which paper, he said, was in evidence in the case. The paper never having been offered in evidence, nor submitted to opposing counsel for their examination, the latter had no opportunity to cross-examine the witness who made it concerning the data from which it was prepared, or other circumstances connected therewith. In view of all these considerations, it is impossible to escape the conclusion that to permit the exhibit to go to the jury as evidence was error for which the judgment must be reversed. We are unable to say how much the jury may have been influenced by such evidence in finding their verdict. It is enough to say that they may have been influenced by it. Bates v. Preble, 151 U. S. 149, 14 Sup. Ct. 277, 38 L. Ed. 106; Vicksburg & M. R. Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299. In the case last cited, Mr. Justice Harlan, speaking for the court, said:

"While this court will not disturb a judgment for an error that did not operate to the substantial injury of the party against whom it was committed, it is well settled that a reversal will be directed unless it appears, beyond doubt, that the error complained of did not and could not have prejudiced the rights of the party;" citing Smiths v. Shoemaker, 17 Wall. 630, 639, 21 L. Ed. 717; Deery v. Cray, 5 Wall. 795; Moores v. Nat. Bank, 104 U. S. 625, 630, 26 L. Ed. 870; Gilmer v. Higley, 110 U. S. 47, 50, 3 Sup. Ct. 471, 28 L. Ed. 62.

The judgment is reversed, and the cause remanded for a new trial.