# Harwell *v.* The State.

## *Violating Prohibition Law.*

(Decided February 11, 1915. Rehearing denied April 6, 1915. 68 South. 500.)

1. *Appeal and Error; Review; Presumptions.*—As every reasonable presumption is indulged in favor of the ruling of the trial court, the ruling of the court that the evidence sufficiently showed that a witness could not be found, so as to justify the admission of his evidence given at a former trial, will not be reversed unless the evidence in connection with the presumption fails to disclose that the witness could not have been found by the exercise of reasonable diligence.

2. *Evidence; Testimony on Former Trial; Predicate.*—While the evidence was sufficient to show that a witness who had testified on a former trial, and who had been subsequently indicted for murder, could not be found by the exercise of reasonable diligence, and that his testimony given on the former trial was, therefore, admissible, yet it was not sufficient to show that due diligence had been exercised to procure the presence of another witness, and the admission of his testimony given on a former trial was erroneous.

3. *Same; Contents of Bottles.*—A witness may testify, without producing the bottles, that the bottles which he found in the house of the defendant contained whiskey, as whiskey is a commodity whose characteristics are matters of common knowledge, and of which the courts can take judicial notice.

4. *Same; Hearsay.*—Where there was nothing to show that the fact that the sheriff had received a note that there was whiskey in the defendant's house was not personally known by the witness, it was not error to refuse to strike the testimony of such witness, on the grounds of hearsay, that he knew that whiskey was in defendant's house, because the sheriff had got a note that there was.

5. *Same; Opinion Evidence.*—Testimony that the place where liquors were found bore evidence of having been used before, is admissible as the statement of a collective fact.

6. *Appeal and Error; Evidence; Curing Error.*—Where, on the second trial, the excise official testified fully as to the amount that he had paid the witness, it was not error to permit the introduction of such testimony, given by the witness on the former trial, notwithstanding the court had erroneously refused to permit such witness on such former trial, to be cross-examined as to the amount he had been paid by such excise official; the defendant having the full benefit of all the evidence that could have been obtained if the former cross examination had been permitted.

7. *Trial; Reception of Evidence; Objections.*—If the grounds assigned as objections to the admission of evidence are not well taken, the court will not be put in error for admitting such evidence, although it may be subject to other grounds of objection; the rule being that a specific ground interposed to evidence is a waiver of other grounds of objection.

8. *Same; Motion to Strike.*—Where part of the evidence, as to a witness' knowledge that the defendant had whiskey in his house, was brought out by the state, and part by the defendant, and it was all admissible as tending to show that the witness had been taking considerable interest in the prosecution, and in discovering evidence against the defendant, the court did not err in overruling motion to strike all such evidence.

9. *Intoxicating Liquors; Evidence.*—Evidence of the finding of whiskey concealed under a window in defendant's bedroom, in connection with other evidence as to the method of its concealment, and as to a sale by the defendant, was admissible as tending to show the keeping of liquors for sale, thus corroborating the evidence on the main issue.

10. *Witnesses; Examination; Repetition of Question.*—The record imports verity, and where it shows that the court sustained objection to the question because the defendant had already had the full benefit of the evidence sought to be elicited it did not show error.

11. *Trial; Taking Evidence to Jury Room.*—Where the testimony of a witness at a former trial had been admitted, it was error for the court to permit the jury to take with them to their room the complete report of the testimony both for the state and the defendant, taken on the former trial, even though the court cautioned them that they should consider only the testimony introduced, and although it was within the court's discretion to have permitted them to take the admitted testimony with them.

12. *Charge of Court; Reasonable Doubt.*—A charge asserting that if after weighing and considering all the evidence, one or more of the jurors feels that he desires more evidence before he can "never" get an abiding conviction of the guilt of the defendant, then the jury have a reasonable doubt of defendant's guilt, and cannot convict, was erroneous in the use of the word "never," and also as basing a verdict on feeling or sentiment.

13. *Same; Invading Province of Jury.*—A charge asserting that the keeping of prohibitive liquors in one's residence is not prima facie

evidence that they were kept for sale, not only invades the province of the jury, but also ignores the manner in which said liquors were kept.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

James L. Harwell was convicted of violating the prohibition law, and he appeals. Reversed and remanded.

See, also, 11 Ala. App. 188, 65 South. 702.

The facts sufficiently appear from the opinion. The following charges were refused to defendant: (1) If after weighing and considering all the evidence in the case, one or more of the jurors feel that he desires more evidence before he or they can never get an abiding conviction of the guilt of defendant, then the juror has a reasonable doubt of defendant's guilt, and the jury could not convict defendant. (2) Affirmative charge. (3) The keeping of prohibited liquors in one's residence is not prima facie evidence that they were kept for sale.

WILLIAM H. & J. R. THOMAS, WILLIAM R. BRASSELL and J. LAMAR WILEY, for appellant. The court was in error in admitting the testimony of the witnesses Molton and Stanford, given on the former trial, as there was no showing of proper diligence in procuring their presence.—*Pope v. The State,* 63 South. 771. On a former appeal, it was held that the court erred in not permitting a cross-examination of these witnesses as to their payment by the excise official, and this rendered the evidence inadmissible.—*Harwell v. The State,* 65 South. 702. For other authorities on this question see *Pate v. The State,* 158 Ala. 1; *L. & N. R. R. Co. v. Dilburn,* 178 Ala. 600; *Lowery v. The State,* 98 Ala. 45. The court erred in admitting evidence of the findings of whisky and gin under a window in defendant's bedroom, and that the bottle there found contained whisky.—*Morton*

*v. The State,* 30 Ala. 527; *Patton v. Rambo,* 20 Ala. 485. The fact that the sheriff had received a note, stating that the whisky was there, and that the witness knew because of such note, was hearsay and inadmissible.— *Tarver v. The State,* 9 Ala. App. 18; *Layton v. Campbell,* 155 Ala. 220. The court erred in admitting evidence that the place showed evidence of having been used before.—*Roden Grod. Co. v. Gibson,* 9 Ala. App. 164.

WILLIAM L. MARTIN, Attorney General and T. H. SEAY, Assistant Attorney General, for the State. Under the predicate laid down the court properly admitted the evidence given on the former trial.—*Pope v. The State,* 63 South. 71; *W. J. Brown v. The State,* in MS. Court of Appeals. Counsel discuss other errors insisted on, but without citation of authority.

BROWN, J.—The point most strenuously urged by the appellant for the reversal of the judgment of the trial court is that the evidence offered by the state as a predicate for the introduction of the testimony of the witnesses Louis Stanford and George Molton, given on a former trial of the case, was not sufficient to justify the conclusion reached by the trial court that the whereabouts of these witnesses was unknown, and their testimony unobtainable by due diligence.

In a recent decision our Supreme Court, in the case of *Pope v. State,* where that court reversed the judgment of the trial court for refusing to admit the testimony of a witness given on a former trial, stated the rule thus: "It must be conceded that evidence of what a witness has sworn on a former trial, where there was opportunity for cross-examination, should be received, when it appears that the personal attendance of the wit-

ness is unobtainable, though it cannot be shown affirmatively that the absent witness is either dead, insane, or beyond the jurisdiction of the court. If, for example, it be shown that the whereabouts of the witness is unknown after diligent search, the reason of the rule for this exceptional sort of evidence, which is to avoid a failure of justice (*Marler v. State,* 67 Ala. 55, 42 Am. Rep. 95), obtains and holds good in such a case. There are precedents to the contrary in some other states; but the better and more general opinion is that inability to find a witness is a sufficient reason for his nonproduction (1 Greenleaf on Evidence [16th Ed.] § 163g, p. 284). * * * The objection taken in the court below called attention to one defect only in the predicate laid, to wit: That the proof of Body's death or absence from the state was insufficient; whereas defendant's effort was to show that the witness could not be found, whether dead or alive, whether within or without the state. The question whether the witness could not be found after due diligence was preliminary to the introduction of the proposed testimony, and in the court below was addressed to the judgment of the presiding judge. Here the question is whether, after making proper allowance for the finding below, it sufficiently appears that the whereabouts of Body was unknown, and his testimony at first hand unobtainable by due diligence. If so, he was dead for the purposes of evidence, and secondary proof of his testimony should have been received."— *Pope v. State,* 183 Ala. 61, 63 South. 71, 72.

In other words, the trial court having held that the predicate was sufficient to justify the admission of the testimony in this case, every reasonable presumption must be indulged in favor of that ruling; and, unless the evidence, when considered in connection with the presumption of correctness accorded to the ruling of the

trial court, does not show that by the exercise of proper diligence these witnesses could have been found, and their personal attendance obtained, this court would not be justified in putting the trial court in error for admitting this testimony.

The case presented to the trial court showed that a subpœna had regularly issued for all of the state's witnesses, including the witnesses Stanford and Molton, on the 24th day of July, 1914; that the subpœna regularly reached the hands of the sheriff on the 25th of July, and was returned executed on all of the witnesses except Stanford, Molton, and one other on the 2nd day of August, 1914. The return of the sheriff, which was signed by him, stated that said witnesses "could not be found in my county." This return carried with it a presumption of law that the sheriff had discharged his official duty, and had made diligent search in Montgomery county for the witnesses shown by the return to have been "not found."—Jones on Evidence, §§ 45, 46; *Roman v. Lentz,* 177 Ala. 70, 58 South. 438.. In addition to this, it is shown that the witness Stanford was under an indictment for murder, and that the sheriff had a capias for his arrest; that the sheriff had offered a reward for the apprehension of Stanford; and that he had not been located. The evidence further tended to show that Stanford was reared in Montgomery county, and that his parents still resided in the county, and it does not appear from the evidence that he had any permanent residence at any other place. There is also evidence tending to show that search was made for these witnesses by the sheriff and his deputies, and that they were not able to find them. As to the witness Molton, it was shown that he lived in Montgomery county part of the time, but that at one time he was found in Autauga county, and the witness on the former trial tes-

tified that he lived in "Boguehomme," a suburb of the
city of Montgomery, and the testimony shows that the
subpœna was not sent to Autauga county, and that no
search or inquiry was made for the witness in Bogue-
homme. We are not able to say that the evidence offer-
ed was not sufficient to justify the court in reaching
the conclusion that the whereabouts of the witness
Stanford was unknown, and that his evidence at first
hand was unobtainable by due diligence.—*Pope v.
State, supra.* But, as to the witness Molton, the predi-
cate was not sufficient, and the court erred in admit-
ting his testimony given on the former trial.—*Wheat v.
State,* 110 Ala. 68, 20 South. 449; *Burton v. State,* 107
Ala. 68, 18 South. 240.

On the first trial of the case the witness Stanford
was examined as a witness in behalf of the state, testi-
fying to the purchase by him of some whisky from the
defendant. Upon the cross-examination of this witness
he stated that he had bought this whisky from defend-
ant under instructions from one McCord, who was also
examined as a witness in behalf of the state; McCord
testifying that he was officially connected with the ex-
cise commission of Montgomery, and that it was his
business to run down "blind tigers." On cross-examina-
tion as to the nature of the employment of Stanford by
McCord, Stanford stated that he was not paid specially
for buying whisky from the defendant, and was asked
this question: "What is he to pay you for it?" The
trial court sustained an objection to this question, and
on appeal to this court from a judgment of conviction
that judgment was reversed for this ruling of the trial
court, this court saying: "We are of opinion that the
question was one which the court should have allowed
to be answered. On the cross-examination of the wit-
ness the defendant was entitled to bring out any fact

having a tendency to impeach his impartiality. It is not to be denied that the jury, in determining whether or not the witness was under the influence of a bias that might affect the weight to be accorded to his testimony, should have been permitted to look, not only to the fact that he had been employed to obtain incriminating evidence against the defendant, but to the amount of compensation he expected to receive for the service rendered by him in that regard."—*Harwell v. State*, 11 Ala. App. 188, 65 South. 702.

The cross-examination of this witness in all other respects on the first trial appears to have been full and complete.

When the official stenographic report of the testimony of the witness Stanford given on the first trial, showing the ruling of the court above adverted to adverse to the defendant, was offered in evidence, the defendant objected on the ground that he had not had full opportunity to cross-examine the witness, being denied the right to have the question above set forth answered, and that for this reason the stenographic report of the testimony of this witness should not be received against him. Before the testimony of the witness given on the former trial is admissible, it must appear that the witness has been cross-examined or a full opportunity afforded for cross-examination by the party against whom the testimony is offered (*Pruitt v. State*, 92 Ala. 43, 9 South. 406) ; and, if it did not appear from the record in this case that the testimony called for by the question propounded to the witness Stanford on cross-examination as to what McCord paid him for his services was fully developed by other evidence in the case, the admission of the testimony of the witness would clearly be error for which the judgment of the trial court would have to be reversed; but the record shows that McCord

himself testified. fully on this subject, his testimony showing on cross-examination that he paid the witness Stanford $20 per month for his services, and that Stanford was in his employ at the time he bought the whisky from the defendant, and this evidence was brought out before the state offered the testimony of the witness Stanford on the former trial. This fact was admissible for the purpose of discrediting the testimony of the witness by showing interest and bias, and, the fact being shown without dispute by McCord, the defendant had all the benefit he could get if he had proven the same fact by Stanford. Therefore the trial court was not in error in the admission of this evidence.

Whisky is a commercial commodity, the characteristics of which are so well known by all men that courts take judicial knowledge of its nature and effects.—Jones on Evidence, § 128; *Watson v. State,* 55 Ala. 158; *Daniel v. State,* 149 Ala. 44, 43 South. 22; *Lambie v. State,* 151 Ala. 91, 44 South. 51. It being a commodity the characteristics of which are matters of common knowledge, a witness may testify that a certain liquor which he saw was whisky, and it is not necessary to produce the liquor itself.—Underhill on Criminal Evidence, § 47. There was no error, therefore, in allowing the witness McCord to testify that the bottles which he found under the window contained whisky.

The record shows that the trial court sustained the state's objection to the following question: "How long had you known George Molton?" "because the defendant had already asked the witness this same question." While we are unable to see how any injury could result to the defendant by the court's refusing to allow this question, there was certainly no error in the ruling of the court, in view of the fact, shown by the record, that the defendant had already had the benefit of this evi-

18 CA

274   COURT OF APPEALS   [Vol.

[Harwell v. The State.]

dence, which we must assume that he had, in the face of this positive showing in the record, which imports absolute verity here, and is our only guide for information in disposing of the questions presented.—*Dupree v. State,* 148 Ala. 623, 42 South. 1004.

During the examination of the witness McCord by the solicitor he testified with reference to the whisky found at the defendant's house concealed under the window, without objection, "that he knew that it was there before he got there." Without being interrogated as to the source of his knowledge, the witness stated "the way he knew the whisky was there, he got a note"; and to this statement the defendant objected. The court sustained the objection, and excluded the statement of the witness as to receiving the note. On the cross-examination of the witness the defendant brought out the fact from the witness that the sheriff had received the note from some source, and the witness stated that he knew that the whisky was where it was found, because "the sheriff got a note that it was there." The record then shows: "thereupon, the defendant moved to exclude all of his testimony—all about knowing it was there," on the ground that it was hearsay testimony.

The ruling of the trial court in refusing to grant this motion can be justified for two reasons; the first being that all that the witness had said about knowing that the whisky was there, and that the sheriff received a note to that effect, does not clearly appear to have been hearsay. The fact that the sheriff received the note appears to have been a positive statement based upon the personal knowledge of the witness of this fact, and was therefore not subject to the objection urged against it. The statement of the witness that he knew the whisky was there appears to have been a mere conclusion, but it was not hearsay. The only matter subject to this objection

was the contents of the note received by the sheriff, which were not disclosed.

It is a familiar rule that the assigning of a specific ground of objection to evidence is a waiver of all other grounds, and, if the objection assigned is not apt, the court will not be put in error for overruling it, although the evidence may be subject to other objections.—*Mc-Daniel v. Stae*, 97 Ala. 14, 12 South. 241.

Both the sheriff and McCord were examined as witnesses in behalf of the state touching the question of defendant's guilt, and this evidence had a tendency to show that these witnesses had been taking considerable interest in the prosecution and in discovering evidence against the defendant. Therefore this testimony was admissible for the purpose of showing bias on the part of these witnesses, and was favorable to the defendant and for this reason the ruling of the court could not have resulted in injury to the defendant. A part of the evidence having been brought out by the state in the absence of any objection on the part of the defendant, and the remainder having been brought out by the defendant himself, and the whole of it being admissible for the purpose above indicated, the court was justified in overruling the motion to exclude it.

The evidence of the witness Hood about the finding of the whisky back in a bedroom concealed under a window, in connection with the evidence of McCord that it was so concealed that, by pulling off a board or plank under the window, access could be had to the aperture where it was concealed, and the further evidence tending to show a sale by Harwell a few days before, was clearly admissible as evidence tending to show the keeping of liquors for an unlawful purpose, and corroborative of the evidence on the main issue in the case, that the defendant sold liquors without a license and contrary to law.

The statement of the witness that the place where the whisky was found bore evidence of having been used before was permissible as a statement of a collective fact, and there was no error in overruling defendant's objection to the question which brought out this statement.— *S. & N. A. R. R. Co. v. McLendon,* 63 Ala. 266; *Carney v. State,* 79 Ala. 14; *Jenkins v. State,* 82 Ala. 28, 2 South. 150; *James v. State,* 104 Ala. 20, 16 South. 94; 1 Mayf. Dig. 337, § 495½; *Stout's Mountain Coal & Coke Co. v. Tedder,* 188 Ala. 66 South. 619.

After the testimony of Stanford and McCord had been read to the jury from the stenographic report of the evidence on the former trial, over the objection of the defendant, the court allowed the jury to take with them in to their deliberations the entire stenographic report of the evidence, embracing all the testimony, both for the state and for the defendant, on the former trial, accompanied with instructions that they were only to consider the stenographic report on the former trial of the testimony of the witnesses Stanford and Molton. The only part of this stenographic report that was admitted as evidence in this case was the testimony of Stanford and Molton, and it was within the discretion of the trial court to allow this evidence to be carried out by the jury with them to be considered in their deliberations, or to withhold it from them, leaving them to rely upon their recollection of the testimony, and this discretion is one that this court would not revise.—*Anderson v. State,* 160 Ala. 81, 49 South. 460; *Smith v. State,* 142 Ala. 28, 39 South. 329. However, the court had no such discretion as to the testimony of the other witnesses on the former trial. The Supreme Court of New Hampshire in an early case held: "If any part of a deposition is incompetent, it cannot be passed to the jury.—*Smith v. Nashua & Lowell R. R. Co.,* 27 N. H. 100 [59 Am. Dec.

364.]. If a single passage or extract is read to the jury, the residue relating to other matters foreign to the case on trial, the deposition cannot go to the jury without consent; nor would it make any difference that the jury were instructed to consider and regard only those parts which had been read to them."—*Shute v. Robinson*, 41 N. H. 308; 6 Ency. Pl. & Pr. § 24, p. 586.

These authorities are referred to with approval in the opinion of the court in *Smith v. State, supra,* and we entertain the opinion that the utterance of the New Hampshire court above quoted enunciated a sound rule of law, and that the trial court committed error in allowing such portions of the stenographic report of the evidence on the former trial as were not admitted in evidence to be carried out by the jury.

There was no error in refusing charge 1 requested by the defendant. If for no other reason, this charge was bad because it leaves the question of finding the verdict for or against the defendant to a matter of feeling or sentiment. The charge was properly refused for another reason. It asserts. "If, after weighing and considering all the evidence in the case, one or more of the jurors feels that he desires more evidence before he or they can never get an abiding conviction of the guilt of the defendant, then such juror has a reasonable doubt of the defendant's guilt, and the jury should not convict him."

The use of the word "never" clearly renders this charge bad.

There was no error in refusing charge 2, the affirmative charge requested by the defendant.

Charge 3 was properly refused, because it gives undue prominence to part of the evidence, and it also invades the province of the jury, in that it ignores the testimony tending to show the manner in which the liquors were kept.

For the errors pointed out, the judgment of the city court must be reversed.

Reversed and remanded.