173 So. 240

## BRANDON v. STATE.
### 6 Div. 757.

Court of Appeals of Alabama.
March 17, 1936.

Rehearing Denied May 26, 1936.

Reversed after Mandate Nov. 3, 1936.

Rehearing Stricken Dec. 15, 1936.

Motion to Set Aside Order Striking Rehearing Denied Jan. 12, 1937.

Ernest Matthews, Clarence Mullins, and John D. Hill, all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

In each count of the indictment in this case, this appellant was designated as "Deputy Circuit Clerk of the Criminal Division of the Circuit Court of the Tenth Judicial Circuit of Alabama."

It is without dispute that said purported office being held by appellant was under the provisions of the act of the Legislature approved February 3, 1923, Gen.Acts 1923, p. 15; the title to which reads as follows: "To create the office of Deputy Circuit Clerk of the Criminal Division of the Circuit Court in all counties of the State having a population of more than two hundred thousand, according to the last, or any subsequent Federal census; to provide for the appointment of such officer and the election of his successor; to prescribe the duties, authorities and to fix the compensation of such Deputy Circuit Clerk."

The constitutionality and validity of said act was questioned, by demurrer, and otherwise, in the court below, and to adverse rulings of the trial court, in this connection, due and legal exceptions were reserved, and on this appeal a threshold inquiry is whether there was any such office in Jefferson county as deputy circuit clerk of the criminal division of the Tenth judicial circuit of Alabama at the time it is alleged appellant converted the funds set out in the indictment.

In our initial consideration of the foregoing point of decision, this court was unanimously of the opinion that the act in question was a nullity and violative of sections 106 and 110 of the Constitution. Not being authorized to so declare, and hold, this court proceeded under section 7322 of the Code to submit the question involving the validity of said Statute to the Supreme Court as therein provided.

The pertinent provisions of section 7322, supra, reads as follows: "Validity of statute submitted to supreme court.—Before the court of appeals should strike down any statute, federal or state, not previously nullified by the supreme court, the question involving the validity of same must be submitted to the supreme court for determination, the result shall be transmitted to the court of appeals, which said court shall be controlled in its decision by the determination of the supreme court. When a statute has been assailed upon constitutional grounds, in the court of appeals, and is upheld by said court, the aggrieved party may review the ruling of the court of appeals in this particular, by a writ of error to the supreme court, unless the question was previously submitted to the supreme court by the court of appeals."

In this connection, the following proceedings were had:

"To the Supreme Court of Alabama:

"There is pending in the Court of Appeals a proceeding, on appeal, wherein a material inquiry is the validity of an Act of the Legislature, approved February 3, 1923 (Gen.Acts 1923, p. 15). The title to said Act reads as follows:

"'To create the office of Deputy Circuit Clerk of the Criminal Division of the Circuit Court in all counties of the State having a population of more than two hundred thousand, according to the last, or any subsequent Federal census; to provide for the appointment of such officer and the election of his successor; to prescribe the duties, authorities and to fix the compensation of such Deputy Circuit Clerk.'

"The foregoing question is certified to the Supreme Court, under the provisions of section 7322 of the Code 1923.

"C. R. Bricken,
"Presiding Judge.
"Wm. H. Samford,
"James Rice,
"Judges.

"NOTE.—For the convenience of the court we accompany the foregoing inquiry with briefs of respective counsel. In addition thereto, being of the opinion that the act in question is a nullity, the writer begs permission to also submit his views in this connection also transmitted in writing herewith.

"BRICKEN, Presiding Judge.

"A material inquiry in this case is whether there was any such office in Jefferson County as Deputy Circuit Clerk of the Criminal Division of the Tenth Judicial Circuit of Alabama at the time it is alleged appellant converted the funds set out in the indictment.

"The supposed office purports to have been created by an Act approved February 3, 1923, Gen.Acts 1923, p. 15, the title of which reads as follows:

" 'To create the office of Deputy Circuit Clerk of the Criminal Division of the Circuit Court in all counties of the State having a population of more than two hundred thousand, according to the last, or any subsequent Federal census; to provide for the appointment of such officer and the election of his successor; to prescribe the duties, authorities and to fix the compensation of such Deputy Circuit Clerk.'

"The Criminal Division of the Tenth Judicial Circuit was created by section 3 (A) of an Act approved September 25, 1915, Gen.Acts 1915, p. 809, which now appears as sections 6686 and 6687 of the Code of 1923. These two sections read as follows:

" '6686. How judges designated in circuits of one county having more than three judges.—In circuits composed of only one county for which more than three judges are provided, the judges shall be numbered first, second, third, fourth, and so forth, consecutively, so that each judgeship shall be designated by a number, and the judges shall be so designated on the ballot used in the primary and general election; and where a branch or division of the circuit court of such circuit is held at a place other than at the county site, the judge who shall preside over that division as of course, shall, in addition to his number, be designated by the appropriate name of that division.

" '6687. Divisions of court in such circuit.—The court of such circuits shall have three separate divisions: an equity division, a criminal division, and a law division; and the judge numbered one shall sit in the equity division as of course, the judges numbered two and three shall sit in the criminal division as of course, and the remainder of the judges shall sit in the law division as of course; but in such circuits where a branch or division of the circuit court is held at a place other than at the county site, the judge numbered fifth shall sit in that division as of course, and he shall preside over such division in the trial of all cases, whether equity, criminal, or law.'

"When we consider the Act approved February 3, 1923, along with the sections of the Code quoted, we find that whenever any county in the State other than Jefferson, reaches the requisite population, the Act approved February 3, 1923, would not apply to such county unless the county is also a circuit for which more than three judges are provided, as the Statute directs, because only in the latter event is a Criminal Division of the Circuit Court in counties having 200,000 or more population provided for.

"At the time the Act approved February 3, 1923, was approved Jefferson was the only county in the State having more than 200,000 population. The other 66 counties in the State may meet the population requirement by the time the next census is taken, but reaching the population requirement does not create a Criminal Division of the Circuit Court in such counties. A Criminal Division of the Circuit Court is only created by the Statute in a circuit composed of only one county for which more than three judges are provided. This, without more, we think is sufficient to show that the Act approved February 3, 1923, purporting to create the office of Deputy Circuit Clerk of the Criminal Division of the Circuit Court in all counties of the State having a population of more than 200,000 according to the last or any subsequent Federal census, is in truth and in fact a local law, and not having been advertised as is required by the Constitution, it is null and void.

"In the case of Henry v. Wilson, 224 Ala. 261, 139 So. 259, 261, our Supreme Court said:

" 'While there is an attempt to give the act a cloak of generality, a reading of same discloses that it is intended to deal only with conditions in Jefferson county, though it might apply to Montgomery county in the remote future, but cannot apply to the other counties, in its major parts, unless lawmakers, in the future, change or revolutionize the method of compensating clerks, deputies, or assistants of the respective officials. State v. Gullatt, 210 Ala. 452, 98 So. 373; In re Opinion of the Justices, 216 Ala. 469, 113 So. 584; Mobile County v. Byrne, 218 Ala. 5, 117 So. 83; Birmingham Electric Co. v. Harry, 215 Ala. 458, 111 So. 41'; Kearley v. State ex rel. Hamilton [223 Ala. 548] 137 So. 424.'

"The authorities convince us that the act under discussion is a nullity."

In response to the foregoing, the Supreme Court transmitted to this court the result of their determination, and in a decision rendered the following opinion through Mr. Justice BROWN, which as therein stated, was concurred in by all the Justices of the Supreme Court.

"In Re Act No. 21, Originating in House Bill No. 70, by Fite, Approved February 3rd, 1923, Gen. Acts 1923, pp. 15, 16.

"BROWN, Justice.

"The constitutional integrity of the above Act, entitled 'An Act To create the office of Deputy Circuit Clerk of the *Criminal Division* of the Circuit Court in all counties of the State having a population of more than two hundred thousand, according to the last, or any subsequent Federal census; to provide for the appointment of such officer and the election of his successor; to prescribe the duties, authorities and to fix the compensation of such Deputy Circuit Clerk,' is certified here by the Judges of the Court of Appeals, as an abstract proposition, accompanied with an opinion by the Presiding Judge of said Court, in which it is stated that said Act was passed without publication and proof, required by section 106 of the Constitution. (Italics supplied.)

"We are of the opinion that the Court of Appeals, and for the reasons stated in said opinion, has reached the correct conclusion—that said Act is a local law and was passed in violation of section 106 of the Constitution, and under the mandate of section 110 of the Constitution must be declared void. See, in addition to the authorities cited by the Court of Appeals, Jefferson County v. Busby, 226 Ala. 293, 148 So. 411; Brandon v. Chambers, 229 Ala. 327, 157 So. 235. * * *

"Let the foregoing be certified to the Court of Appeals.

"All the Justices concur."

In accordance with the foregoing, we are required, and so hold, that the act approved February 3, 1923, supra, is a nullity and void. The court below was in error in overruling the demurrer to the indictment. The indictment charged no offense under section 3973 of the Code 1923, and the demurrer thereto should have been sustained.

It is unnecessary to discuss the other questions made by the record.

Reversed and remanded.

On Rehearing.

BRICKEN, Presiding Judge.
The insistences of the state in its application for a rehearing cannot prevail and the application is overruled.

It was essential to the validity of the indictment, and in each count thereof, to aver not only the true and correct name of the accused, but also the official capacity in which he was acting at the time of the alleged embezzlement; and when so alleged such averments being essential ingredients of the offense, the state was under the burden to offer strict proof to sustain them as alleged in the indictment.

In every criminal case, there can be no doubt that it is the duty of the state to show beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis, every fact or circumstance which is necessary to establish the guilt of the defendant as charged in the indictment. Wharton v. State, 73 Ala. 366.

Each of the several counts of the indictment charged the defendant by his correct name, and in each count averred, "he being the Deputy Clerk of the Criminal Division of the Tenth Judicial Circuit, did knowingly convert to his own use, etc., the funds named in the indictment."

As stated in the foregoing opinion in this case, there was no such office as that

named in the indictment; hence the state of necessity could offer no proof to sustain that particular material averment, an essential ingredient of the offense attempted to be charged.

But on application for rehearing the state insists that the defendant was a de facto officer, and as such was subject to the indictment under section 3973 of the Code 1923. This insistence is untenable. In the first place, there can be no de facto officer where no office existed. There is no such thing known to the law as a de facto office. Moreover, no such contention was made in the court below, nor did any count in the indictment charge the accused by any such designation; and if there could be any doubt as to this proposition it must be admitted that in the absence of some allegation to that effect, evidence to sustain such an averment, under the simplest rules of evidence, would have been unallowable. An indictment charging a felony, except by consent of the accused, cannot be added to or taken from, or amended in any manner. A person may not be indicted under one section of the Code and convicted under another. In all criminal prosecutions the accused has the right to demand the nature and cause of the accusation, and to have a copy thereof. Const.1901, § 6.

In the case of King Lumber Co. v. Crow, 155 Ala. 504, 46 So. 646, 130 Am.St.Rep. 65, the Supreme Court of Alabama had for decision this identical question. There an acknowledgment to a conveyance was taken before a judge of an inferior court. The Supreme Court held the act creating the office to be unconstitutional. The second head note of this case reads as follows: "Where the act creating the office is unconstitutional and void, the acts of the officer thereunder are not even de facto, and an acknowledgment taken before such an officer in the conveyance of a homestead separately by the wife, as to the homestead interest, is void."

Further the Supreme Court said: "We therefore pronounce the act unconstitutional; and, being so, there was legally created no such office as 'judge of the inferior court of Woodlawn, Jefferson county, Ala.,' and hence no basis on which to rest an application of the rules saving the acts of de facto officers. The result is that the first mortgage of Coe and wife to appellant, undertaking to convey the homestead, was without the essential separate acknowledgment of the wife, and void."

This decision was followed by the Supreme Court of Alabama, in the case of Schulte v. Wilke, 167 Ala. 663, 52 So. 526, 527, where Chief Justice Anderson, writing the opinion of the Court, used this language: "It therefore results that there could be no office of justice of the peace in and for Ward 10 of the city of Mobile, and Van der Muellen was not even a de facto justice of the peace, and all judgments rendered by him were void, and could not support an appeal, and the proper remedy to review and quash same was by common-law certiorari."

In other words, if no office existed there could be no officer, either de facto nor de jure.

The Supreme Court of the United States, in the case of Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 1125, 30 L.Ed. 178, had this identical question for consideration. In a unanimous opinion in the case, written by Justice Field, the court used this language:

"But it is contended that if the act creating the board was void, and the commissioners were not officers de jure, they were nevertheless officers de facto, and that the acts of the board as a de facto court are binding upon the county. This contention is met by the fact that there can be no officer, either de jure or de facto, if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the supreme court of the state. Whenever such pretensions were considered in that court, they were declared to be without any legal foundation, and the commissioners were held to be usurpers.

"The doctrine which gives validity to acts of officers de facto, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices, and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be

respected and obeyed until, in some regular mode prescribed by law, their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an 'officer' who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is sufficient if the office be provided for by any legislative enactment, however invalid. Their position is that a legislative act, although unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement: An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

The foregoing case has never been overruled nor modified; and, as insisted by appellant, it would seem that in view of our two Alabama decisions, and the clearcut statement of the law as enunciated by the Supreme Court of the United States, that further authority would be unnecessary. However, the following authorities are to the same effect: People v. Hecht, 105 Cal. 621, 38 P. 941, 27 L.R.A. 203, 45 Am.St.Rep. 96; Herrington v. State, 103 Ga. 318, 29 S.E. 931, 68 Am.St.Rep. 95; Buck v. Eureka, 109 Cal. 104, 42 P. 243, 30 L.R.A. 409; In re Norton, 64 Kan. 842, 68 P. 639, 91 Am.St.Rep. 255; People v. Hylan, 212 N.Y. 236, 106 N.E. 89, Ann. Cas.1915D, 122.

"An office attempted to be created by an unconstitutional law has no existence, and is without any validity; and any person attempting to fill such a pretended office, whether by appointment or otherwise, is a usurper, whose acts are absolutely null and void." 26 Ruling Case Law, p. 593.

As the rule is ordinarily stated, there must be an existing office or office de jure to be filled before there can be an officer de facto; hence in the case of an office created by an unconstitutional statute, the incumbent cannot be regarded as a de facto officer. 46 Corpus Juris, p. 1054, § 367.

We deem further discussion unnecessary.

Application overruled.

### After Remandment.

The discussions and decisions heretofore had in this case dealt solely with the question of demurrer to the several counts of the indictment. In the opinions of this court, supra, on this question, the views of this court are stated and clearly expressed; but by provision of statute the conclusion therein reached must be modified to conform to the decision of the Supreme Court (section 7318, Code 1923), which court, on certiorari, held that the demurrer to the indictment was not well taken and was properly overruled. Forney W. Brandon v. State, 233 Ala. 20, 173 So. 251.

The defendant was indicted under section 3973 of the Code 1923, which statute is entitled: "Embezzlement by public officers."

One B. P. Singleton was examined as a witness for the state, and upon his testimony, together with an auditor's report made by him, and others, the state relied principally for a conviction. He testified that he was an assistant examiner of public accounts of the state of Alabama, and as such had been directed to audit the books and records of Forney W. Brandon, deputy clerk Tenth judicial circuit. That he commenced this work in December, 1933, and completed it in March, 1934. That the audit covered the period from October 21, 1927, to December 31, 1933. He also testified that in this work and the compilation of the report he was assisted by five men, none of whom were certified public accountants, or auditors, and that none of these five men was in any manner connected with, or employed by, the state of Alabama, or the comptroller of the state, or by the Governor to do this work; nor were any of said five men who assisted him in making said audit selected by him. And further on in this connection, he stated (record pp. 209, 210): "My report was made from the work sheets." "As to the method of preparing the works sheets: I had four men working for me all of the time and five

part of the time. I had an office on the second floor of the court house at the time this audit was being made. The audit was made in the clerk's office on the sixth floor of the court house. I had two crews of men. None of the men who made the Brandon audit were certified public accountants. I think one of the five was a pretty good man." Further, on this subject, this witness testified (p. 205 of record): "The entries in my report were made from work sheets. I had four or five men helping me and they made up the work sheets. * * * I made my report from their work sheets." There was other testimony of like import as to the way and manner the purported auditor's report was prepared and compiled. The report in question is set out in full in this record and covers 342 pages of the transcript. It was introduced in evidence over the insistent and strenuous objections and exceptions of the defendant. Among numerous other grounds of objection to the introduction in evidence of the purported auditor's report, the further or additional grounds of objection set out below is quoted from the record:

"The defendant then renewed his objection to the admission of the report on all the grounds heretofore assigned and on the additional ground that the testimony of the witness conclusively established that the report of the Auditor was not prepared in the method authorized by law and by persons not authorized by law to make such an audit and on the further ground that the witness not having personally made the audit could not testify as to its correctness.

"The Court overruled the objection, admitted the entire report in evidence to which action of the Court defendant duly excepted."

The record discloses that the books in the office of the defendant were not offered in evidence, nor were either of the five men, mentioned above, who made the "work sheets" from which the purported auditor's report was compiled, examined as witnesses upon the trial of this case.

From the foregoing, it manifestly appears that the so-called auditor's report was not prepared in the manner provided for and contemplated by statute, and was not such report which the statute intended to be "prima facie evidence of what they charge." Section 746, Code 1923. As may be readily seen, the report made by this

witness and admitted in evidence was so made by said auditor upon hearsay, pure and simple, and not upon facts within the knowledge of the witness. For these reasons the several exceptions reserved in this connection were well taken. Moreover, the so-called auditor's report contained innumerable statements and matter which were irrelevant, immaterial, and highly prejudicial. It contained, among many other matters foreign to the issues in this case, what purported to be a confession of the defendant, without any predicate having been laid; a criticism of circuit judges, recommendations to the Legislature, suggestions to the Attorney General's office, and comments on Jefferson county's sheriff, etc.

The record discloses that upon objection by defendant's counsel to innumerable portions of the auditor's report, the jury, by order or permission of the court, retired from the courtroom and during their absence the court sustained numerous objections to portions of the report. But there is nothing in this record to show or to indicate that the particular portions of the report to which objections were sustained were ever brought to the attention of the jury, and it affirmatively appears that the entire report was given to the jury upon retiring to the jury room for their deliberations and remained in their possession thereafter and until a verdict was reached. The only reference made by the court in the oral charge was to the effect that in arriving at their verdict "they should consider only the testimony of the witnesses who have testified before you, and the documentary evidence introduced." It follows from the foregoing that the action of the court in this connection was abortive and of no force or effect. 16 Corpus Juris 1083; Harwell v. State, 12 Ala. App. 265, 68 So. 500; Stoudenmire v. Harper, 81 Ala. 242, 1 So. 857; Bates v. Preble, 151 U.S. 149, 14 S.Ct. 277, 38 L. Ed. 106, 110.

In our case of Butler v. State, 17 Ala. App. 511, 85 So. 864, 865, this court said: "While the statute (Code 1907, § 547, as amended by Acts 1911, pp. 492, 493) provides that, 'Reports of examiners shall be prima facie evidence of what they charge,' it is manifest that this provision does not and could not enlarge upon the rule of evidence which provides that the evidence must be confined to the points in issue, alike in civil and in criminal cases, and facts and circumstances which when

proven are incapable of affording any fair, just, and reasonable presumption or inference, in reference to a material fact or inquiry involved in the issue, cannot be given in evidence. Gassenheimer v. State, 52 Ala. [313] 318. * * * The report should contain no matters foreign to the issues involved, or, if such matters were incorporated in the report, the introduction in evidence thereof should be limited strictly to such matters as were relevant and germane to the issues; and (2) that the defendant should not be deprived of his right of cross-examination upon matters contained in the report and allowed in evidence."

The report as offered, from the undisputed facts, was inadmissible for any purpose. Kersh v. State, 26 Ala.App. 15, 153 So. 284, certiorari denied, Kersh v. State, 228 Ala. 364, 153 So. 287.

In support of the foregoing, we quote from several decisions the following excerpts:

As to the effect of permitting documents not in evidence to be sent out with the jury during their deliberations, we have this rule, as stated in 16 Corpus Juris, at page 1083: "But it is error to permit papers and documents unfavorable to accused, which have not been produced or admitted as evidence in the case, to be taken by the jury into their room and read and considered by them during their deliberations; or to permit the jury to take a complete document, where only a part of it has been admitted in evidence."

We quote from the opinion of Judge Brown, in the case of Harwell v. State, 12 Ala.App. 265, 68 So. 500, 504:

"After the testimony of Stanford and McCord had been read to the jury from the stenographic report of the evidence on the former trial, over the objection of the defendant, the court allowed the jury to take with them into their deliberations the entire stenographic report of the evidence, embracing all the testimony, both for the state and for the defendant, on the former trial, accompanied with instructions that they were only to consider the stenographic report on the former trial of the testimony of the witnesses Stanford and Molton. The only part of this stenographic report that was admitted as evidence in this case was the testimony of Stanford and Molton, and it was within the discretion of the trial court to allow this evidence to be carried out by the jury with them to be considered in their deliberations, or to withhold it from them, leaving them to rely upon their recollection of the testimony, and this discretion is one that this court would not revise. Anderson v. State, 160 Ala. [79] 81, 49 So. 460; Smith v. State, 142 Ala. [14] 28, 39 So. 329. However, the court had no such discretion as to the testimony of the other witnesses on the former trial. The Supreme Court of New Hampshire in an early case held:

" 'If any part of a deposition is incompetent, it cannot be passed to the jury. Smith v. Nashua & Lowell R. R. Co., 27 N.H. [86] 100 (59 Am.Dec. 364). If a single passage or extract is read to the jury, the residue relating to other matters foreign to the case on trial, the deposition cannot go to the jury without consent; nor would it make any difference that the jury were instructed to consider and regard only those parts which had been read to them.' Shute v. Robinson, 41 N. H. 308; 6 Ency.Pl. & Pr. § 24, p. 586.

"These authorities are referred to with approval in the opinion of the court in Smith v. State, supra, and we entertain the opinion that the utterance of the New Hampshire court above quoted enunciated a sound rule of law, and that the trial court committed error in allowing such portions of the stenographic report of the evidence on the former trial as were not admitted in evidence to be carried out by the jury."

In the case of Stoudenmire v. Harper, 81 Ala. 242, 1 So. 857, 859, Judge Clopton, used this language: "Under the rules stated, the witness should not have been permitted to refresh his memory by the memorandum, nor counsel to exhibit it to the jury in argument, nor should the jury have been allowed to take it with them in their retirement. The instruction to the jury, that they were not to consider it as evidence, does not free the use of it from injury. If not evidence, it was improper to let it go before the jury."

The Supreme Court of the United States has reviewed this question in the case of Bates v. Preble, 151 U.S. 149, 14 S.Ct. 277, 279, 38 L.Ed. 106, 110. We quote from the opinion: "2. By the ninth assignment of error it appears that after the close of the case, and when the jury were about to retire to consider their verdict, the court allowed the whole of the memorandum book to go to the jury with-

out any sealing or other protection of the leaves and pages not put in evidence. It appears that, when the court admitted the leaves and pages containing the memoranda above alluded to, it directed the rest of the book to be sealed up, or otherwise protected from the inspection of the jury; but that, when the jury were about to retire, the plaintiff offered to send the whole book without such protection; and the court directed the jury not to examine any part of the book, except what was put in evidence, and permitted the whole book with that instruction to go to the jury. To this the defendants excepted. We think the court should have adhered to its directions to take such measures as were necessary to prevent the jury from seeing other portions of the book, as they contained matter which, though bearing upon the issue, was wholly inadmissible as testimony, and was calculated to create in the minds of the jury a strong prejudice against the defendants. This error was not cured by the instructions to the jury not to examine any part of the book, except what was put in evidence. Such instructions might have healed the error, if the contents of the book had been unimportant. But the objectionable portions in this case were such as were likely to attract the eye of the jury, and accident or curiosity would be likely to lead them, despite the admonition of the court, to read the plaintiff's comments upon the defendants, and her private meditations, which had no proper place in their deliberations. The precise question involved here arose in Kalamazoo Novelty Mfg. Co. v. McAlister, 36 Mich. 327, where an entire book was suffered to be taken to the jury room when but three pages were in evidence, and it was held that the instruction not to look at the unproved part should not be taken as relieving its admission to the jury room from error. See, also, Com. v. Edgerly, 10 Allen, 184; Stoudenmire v. Harper, 81 Ala. 242, 1 So. 857."

The present case is much stronger in facts than this case decided by the Supreme Court of the United States. In the case at bar, the court never instructed the jury what they should consider and what they should not consider, but permitted the entire document to go to the jury room without even information as to what part of the report, if any, had been taken from their consideration.

There are numerous other questions presented and insisted upon on this appeal, but from what has been said we see no necessity of extending this opinion further.

Reversed and remanded.

## PER CURIAM.

The rendition of the judgment in the foregoing case was had on the 3d day of November, 1936.

Application for rehearing was filed on November 19, 1936.

On November 27, 1936, appellant filed his motion to strike the application upon the following grounds:

"Motion to Strike Application
for Rehearing.

"Now comes the appellant in the above styled cause, by his attorneys, and moves the Court to strike the application for rehearing filed by appellee, and for grounds of said motion sets down and assigns the following:—

"1st: For that said application for rehearing comes too late.

"2nd: For that more than fifteen days had elapsed from the date of the decision in this case by this Court before said application for rehearing was filed.

"3rd: For that this Court rendered a judgment reversing and remanding this case on the 3rd day of November, 1936, and the application for rehearing was not filed until the 19th day of November, 1936.

"4th: For that this Court entered a judgment reversing and remanding this cause on the 3rd day of November, 1936, and a copy of the application for rehearing was not served on appellant, or his counsel, within fifteen days after said date.

"5th: For that this Court entered a judgment reversing and remanding this cause on the 3rd day of November, 1936, and the application for rehearing was not served on appellant, or his counsel, until to-wit, the 21st day of November, 1936.

"6th: For that the appellee failed or refused to file a brief on the questions involved in the decision of this case upon the original submission, thereby declining to give the Court the benefit of their views."

The grounds stated in the motion aforesaid being well taken, the application for

rehearing was duly stricken by this court on December 15, 1936.

On December 17, 1936, the state, through the Attorney General, filed a "petition to vacate order striking appellee's application for rehearing and to reinstate said application."

Supreme Court Rule 38, expressly provides: "All applications for rehearing must be filed with the clerk of the court, accompanied by brief for the applicant and a certificate of counsel that a copy of such brief has been delivered to opposite counsel, within fifteen days after the rendition of the judgment, * * * and that, no such application shall be received or filed which is not presented in strict compliance with this rule."

The averment in the foregoing petition to the effect that said application for rehearing was filed within fifteen days is not borne out by the record. The facts set forth in the petition as to the filing of said application does not constitute a filing as contemplated by law and the decisions of the appellate courts of this state. In re State ex rel. Attorney General, 185 Ala. 347, 64 So. 310, 311. In said case the court, among other things, said: "As appears, the unqualified requirement of the rule is that applications for rehearing 'must be filed with the clerk * * * within fifteen days after the rendition of the judgment.' Manifestly the posting of an application, properly addressed, is not a compliance with the rule. It must be filed within the period stipulated. The mail must and could only be the agent or agency of the party applying for rehearing. If there be delay in the transmission of the application by the mail, however free from fault or negligence the applicant may have been, it cannot be said that he has complied with this very necessary and wholesome provision of the rule. In mailing or otherwise transmitting the application, the chance of miscarriage or delay is a contingency, the happening of which the applicant must assume. Such miscarriage or delay will rarely occur; but when they do it [not] cannot be affirmed that seasonable, proper posting answers the prescription of the rule. This application for rehearing was so seasonably and properly posted as that in due course it should have reached the clerk on July 4, 1913, the last day, fifteenth day, on which it could have been seasonably filed with the clerk. It did not reach him within time."

Moreover, the mere filing of the application for rehearing within the stated period is not the only prerequisite for its consideration. The rule, supra, makes it mandatory also, that the application for rehearing must be accompanied by brief for the applicant and a certificate of counsel that a copy of such brief has been delivered to opposing counsel, within fifteen days after the rendition of the judgment. This was not done, as affirmatively appears in the petition to reinstate now under consideration. Paragraph 2 of said petition reads as follows: "2. Petitioner further avers that when corrected copies of the said application for rehearing and the brief and argument in support thereof had been returned to the Office of the Clerk of the Court as alleged above, Mr. Garrett, of counsel for appellee, caused a copy thereof to be that day mailed, postage prepaid, to Mr. Ernest Matthews, of counsel for appellant, whose proper Post Office address is Birmingham, Alabama." It is admitted in said petition, and no contention to the contrary appears, that the service upon opposing counsel was not even mailed until after the expiration of the period of fifteen days. In this connection it affirmatively appears that the service had upon opposing counsel was on December 21, 1936, which was several days after the requisite time had expired. In re State ex rel. Attorney General, 185 Ala. 347, 64 So. 310, supra. See, also, Ex parte State ex rel. Breitling, 221 Ala. 398, 128 So. 788; Taylor v. Lunsford, 26 Ala. App. 127, 129, 154 So. 608; Grand Lodge, K. P. of North America v. Walker, 26 Ala.App. 132, 154 So. 827; Shirey v. State, 18 Ala.App. 109, 110-112, 90 So. 72; Ex parte Shirey, 206 Ala. 167, 90 So. 75; Ex parte Locklear, 205 Ala. 236, 87 So. 712. The decisions on this identical proposition by the appellate courts of this state are innumerable, and other than those cited herein, need not be here referred to.

After a full consideration the court must, therefore, decline to disturb its order of December 16, 1936, striking the application for the reasons stated.

Petition denied.