29 So.2d 152

## COCKRELL v. STATE.

### I Div. 527.

Court of Appeals of Alabama.

Jan. 14, 1947.

Rehearing Denied Feb. 11, 1947.

Johnston, McCall & Johnston, of Mobile, for appellant.

619

Wm. N. McQueen, Atty. Gen., and MacDonald Gallion, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Appellant was charged with the offense of receiving stolen property. The indictment consists of two counts. The first count charges that the defendant did buy, receive, conceal or aid in concealing sixty (60) cartons of cigarettes of the value of $1.20 per carton of the aggregate value of $72, the personal property of Ogburn-Davison Company, a co-partnership composed of W. F. Davison, R. W. Ogburn, Jr. and A. P. Ogburn, knowing that they were stolen, and not having the intent to restore them to the owner. The second count contains the same averments except that it alleges that the defendant received the cigarettes "knowing that they were stolen, or having reasonable grounds for believing that they were stolen, and not having the intent to restore them to the owner."

Before entering upon the main trial defendant interposed demurrer to the second count of the indictment; the principal insistence in this connection is to the effect, that the alternative allegation "or having reasonable grounds for believing that the cigarettes were stolen," is null and void in that it is so vague and indefinite as to make said alternative violative of the Fifth and Sixth Amendments to the Constitution of the United States, and of Sections Six and Seven of the Constitution 1901 of the State of Alabama. Other grounds of demurrer were of the same import. The trial court overruled the demurrer and in so doing committed no error. We find upon examination that the second count of the indictment is formulated upon the exact words of the Statute. Title 14, Section 338, Code of Alabama 1940. Said count also complies with the provisions of Section 232, Title 15, Code 1940, towit: "The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repeti-

tion, in such a manner as to enable a person of common understanding to know what is intended * * *."

It was earnestly insisted in the court below, and here on appeal, that the evidence adduced upon the trial was insufficient to prove the corpus delicti, hence the defendant was entitled to a directed verdict.

■ The corpus delicti may be established by direct testimony, also by circumstantial evidence, but in either event such evidence must be legal in contemplation of law. Hearsay will not suffice. Brandon v. State, 27 Ala.App. 321, 327 et seq., 173 So. 240.

■ On this question, in the instant case, witness Davison, a member of the partnership designated as the injured party, was properly allowed to testify to the substantive fact that the warehouse alleged to have been broken into and entered was in fact broken into by having been entered through a hole in the roof of the warehouse building. He testified that he had seen the hole in the roof. It was not incumbent upon the State to show that the witness was present at the time of the breaking. This witness was allowed to testify, without objection, that about 300 cartons of cigarettes were stolen from the warehouse on that occasion. As to this, we quote from the record as follows:

"Q. I will ask you whether, or not, you could see with your own eyes, and did see, the hole that was made in your roof, from the inside on the second floor? A. I could see and did see the hole in the roof.

"Q. Now, was that breaking or entering made during business hours, or not? A. It was not during business hours.

"Q. Now, who reported it to the police? A. Best of my recollection, one of our warehousemen reported it to the police.

"Q. Now, this particular second floor where the entry was made, Mr. Davison, I will ask you whether there were cigarettes on that second floor where the breaking was made? A. The cigarettes in our warehouse are not stored on the second floor, but on the first floor.

"Q. All right, now how are they kept? Are they kept in any particular room, or any particular enclosure? A. They are kept in enclosures, and it might be said rooms,—they are kept separated; different denomination stamped cigarettes are kept separate one from the other.

"Q. Is that enclosure a wood or wire enclosure? A. Just a wire mesh.

"Q. Just a wire mesh enclosure? A. Chicken wire or something, just to make up an enclosure, and to have a door, which is not used.

"Q. Now, were any of the cigarettes missing from that room or from that enclosure? A. They were.

"Q. Approximately how many were missing,—about how many cartons? A. On this last occasion, about 300, as I remember it.

"Q. 300 cartons? A. Cartons.

"Q. Now, those 300 cartons, was there any distinctive stamp or mark on them? A. There was.

"Q. Describe that to the Jury, please sir, Mr. Davison. A. The cigarettes missing on this occasion were cigarettes of two or three denominations. By denomination I mean stamp identification,—Mississippi stamped cigarettes, the State of Alabama stamped cigarettes and Mobile County stamped cigarettes."

■ In addition to the foregoing the State offered other evidence tending to show that on the morning after the warehouse was broken into and the cigarettes "were taken" the witness "went down to a vacant lot near the warehouse" and, at the instance of other parties, "and got 300 cartons of cigarettes"—the State connecting these cigarettes as being the ones it contended were stolen. Further, the cigarettes identified by a certain number on the stamps and otherwise, were found in the possession of defendant (60 cartons) who readily admitted that he had bought them from a negro. Defendant denied any and all knowledge of the fact that the cigarettes he bought were stolen property. The attendant facts as circumstances of all this, were for the jury to consider and determine.

Numerous other insistences of error are presented and argued. We do not deem it necessary to discuss these questions at length for they may not arise upon another

trial which we, perforce, must order and reverse and remand this case upon the prejudicial errors in the court's rulings on the admission of evidence hereinafter discussed.

The record discloses that appellant is a young white man, about 32 years of age, and was a merchant with his place of business in the town of Prichard, Ala., adjacent to the City of Mobile. He offered the testimony of a number of business men of that community, each of them testified that defendant was a man of good character. On cross-examination the solicitor was allowed by the court, over timely objections and exceptions, to ask this question: "Q. I will ask you if you don't know that this defendant has been arrested and convicted of violating the prohibition law, and sentenced to two years in the State penitentiary?" Similar questions were propounded to several other character witnesses, and exceptions were reserved to adverse rulings of the court.

It was improper on cross-examination of a character witness for accused, to ask if he knew the defendant had lately associated with a thief, assuming without actual knowledge that the person was a thief. The question as framed is not an inquiry as to the character or reputation of the defendant, but is a cross-examination of the witness as to his knowledge of a particular act or conduct of the defendant. The question evidently was not asked in order to test the witness' estimate of good character, but manifestly was for the purpose of proving a conviction to attack the defendant's credibility as a witness when he took the stand. Conviction of the offense of violating the prohibition law does not involve moral turpitude, and a conviction for such an offense was not proper evidence.

In Baugh v. State, 215 Ala. 619, 112 So. 157, 158, the Court said:

"In Ex parte Marshall, 207 Ala. 566, 93 So. 471, 25 A.L.R. 338, this court, all the Justices concurring, and following the established construction of the Code, §§ 7722, 7723, [Code 1940, Tit. 7, §§ 434, 435] held that distilling liquor is not a crime involving moral turpitude, although made a statutory felony, and conviction of such offense may not be shown in impeachment of the credibility of a witness."

Our Appellate Courts have, from time to time, had occasion to consider the propriety of such a method of cross-examining a character witness as was pursued by the State's attorney, and the decisions uniformly hold that particular acts or conduct may not be inquired into on cross-examination.

The question was before the court in the case of Finderson v. State, 21 Ala.App. 109, 105 So. 399, 400. After testifyng as to the good character of the defendant, upon cross-examination, the witness was by the solicitor asked this question:

"You say this negro has a good reputation down there—he has been convicted several times for selling liquor, hasn't he?"

The trial court overruled defendant's objection to this question and an exception was reserved. The Appellate Court said:

"This inquiry, and the manner with which it was made, was improper—had no place in this trial. Shields v. State, 104 Ala. 35, 16 So. 85, 53 Am.St.Rep. 17, and numerous cases therein cited. If the purpose of this examination was to test the estimate as to good character entertained by the witness, it should have been conducted in a different manner; the rule applicable thereto being plain and simple. Here the manner of cross-examination was highly prejudicial, and was calculated to seriously, erroneously, and injuriously affect the substantial rights of the defendant. Its tendency was to defeat the fair and impartial trial, free from prejudice, accorded to defendant under the Constitution and law of this state."

See also Way v. State, 155 Ala. 52, 62, 46 So. 273, 275; Roberson v. State, 21 Ala. App. 196, 106 So. 696; Carter v. State, 4 Ala.App. 72, 59 So. 222; Abrams v. State, 17 Ala.App. 379, 84 So. 862; Moore v. State, 26 Ala.App. 607, 609, 164 So. 761; Pinkerton v. State, 31 Ala.App. 599, 601, 20 So.2d 604.

Likewise, on cross-examination of the defendant, he was also interrogated at length by the State as to his having been engaged in violating the prohibition laws. This inquiry had no place in this trial. That it was highly prejudicial cannot be doubted.

Mullins v. State, 31 Ala.App. 571, 19 So.2d 845.

The judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.